## PATTON v. GARRETT.

1. **LANDLORD'S ATTACHMENT**: *Measure of damages on discharge of.*
   On the discharge of an attachment of corn for rent, the presumption is, in the absence of evidence to the contrary, that the corn is returned to the defendant; and his measure of damages, in such case, is, the injury sustained by the detention of the corn and any deterioration of value resulting from the attachment.

2. **SAME**: *Attachment for removing crop.*
   A removal, by the tenant, of any considerable portion of the crop from the field where it grows, to another place rented from the same landlord, without his consent, and there consuming it, will justify him in attaching the crop. A removal of part of the crop from the premises, without his consent, even for honest purposes, will support an attachment.

3. **LANDLORD AND TENANT**: *Measure of rent when in kind.*
   When land is rented for a portion of the crop produced on it, and nothing is stipulated about the manner of cultivation, the landlord can claim only the agreed portion of the crop actually produced' without regard to the manner of cultivation.

4. **SAME**: *Rights and liabilities of landlord when attachment fails.*
   When the grounds of a landlord's attachment prove untrue, he is subjected to damages; but he has the right, even in the case of a premature suit, to recover what he may be justly entitled to, including money value of rents not paid in kind.

5. **DAMAGES**: *Attorney's fees not recoverable on discharge of attachment.*
   Upon the discharge of an attachment, only such damages can be recovered by the defendant as are actual, and the natural and direct consequences of the attachment. And these do not include attorney's fees.

APPEAL from *Washington* Circuit Court.
Hon. JAMES H. BERRY, Circuit Judge.

*B. R. Davidson*, for appellant.

The court erred in instructing the jury that only one-third of the crop " actually produced," without regard to manner of cultivation, could be recovered. *Sec.* 4098, *Gantt's Digest*, gives a lien for " rent," and not simply for a certain part of such crop as " might be raised." Landlord has a lien for his portion of a crop *which should be raised by proper cultivation*, and it extends to the *whole crop.*

Attorneys fees not allowable—only when the suit is vindictive, malicious, or vexatious—as damages.» *Platt* . v. *Brown*, 30 *Conn.*. 336 ; *Dibble* v. *Morris*, 26 *Ib.*, 416 ; *Roberts* v. *Mason*, 10 *Ohio St.*, 277 ; *Stephenson* v. *Railroad*, 1 *Wall.*, *Jr.*, *U. S.*, 164 ; *Schooner Margaret* v. *Steamboat Uonnestogo*, 2 *Wall.*, *Jr.*, *U. S.*, 116 ; *Arcambel* v. *Wise*, 3 *Dallas*, 306 ; *Heath et al.* v. *Leut, adm.*, *et al.*, 1 *Cal.*, 410 ; *Plumb* v. *Woodmansee*, 31 *Iowa*, 116.

## STATEMENT.

EAKIN, J. This is an action under the Statute, by a landlord, before a Justice, for rent payable in kind. The action was brought before the end of the year, for the value of that portion of the crop which was payable to the landlord. An attachment issued, based upon the affidavit of Patton, the landlord, setting forth his lien on the crop, that the rent was due, that he ought to recover $98 therefor, and that "the defendant has removed a part of the crop from the premises, without his consent." It was levied upon a crop of corn in the field. An account for the rent was filed with the affidavit.

Defendant Garrett appeared, and, by written answer, under oath, denied that he was indebted for rent, and, also, that he had removed any part of the crop from the premises without the consent of plaintiff. He also set up, as a counter-claim, a charge for damages, caused by plaintiff, in attaching the crop, "and one horse," and for expenses incurred by himself in recovering the horse, and for the trespass in taking the horse, and for damage to the crop in preventing its being gathered. The horse, however, and the counter-claim disappear afterwards from the proceedings, except in so far as damages under the Statute may be claimed for improperly suing out the attachment.

. The cause was tried before a Justice upon the two issues together, made by the answer, and a verdict was rendered for defendant. Upon appeal to the Circuit Court, the cause was there again submitted on the same issues, with like result. The jury found for defendant, and assessed his damages at $81.66 2-3. Whereupon, the attachment was discharged, and judgment for the amount was rendered against the plaintiff, and his surety in the attachment and the appeal bonds. Plaintiff moved for a new trial, which being refused, he filed a bill of exceptions, and appealed. Pending the suit, as appears from the evidence, the corn attached had been gathered by the constable's directions, and cribbed on the plaintiff's land.

## OPINION.

This cause was tried below, before the publication of *Holiday Bro's. v. Cohen*, 34 *Ark.*, 707, which was intended to fix the practice under an Act of tenth of November, 1875, providing for the recovery, in the same action, of damages by defendant, in case of a discharge of an attachment. The Act is somewhat obscure, and the practice before that time was unsettled. We therefore deem it expedient to waive all

notice of the practice in this case, as being at variance with that prescribed in the case cited, and to look only at the substantial merits

1. LAND-LORD'S ATTACHMENT: Measure of damages on discharge of. The first two grounds of the motion for a new trial are, that the verdict is contrary to law, and unsustained by evidence. The evidence showed that the renting was for a third of the crop. The land was to be cultivated in corn, with the exception of two acres which defendant agreed to plant in tobacco, and with the further exception that the defendant might sow four acres in oats, paying corn rent for the same as if cultivated in corn, to be estimated by the product of the contiguous land. The jury seems to have adopted the plan of charging plaintiff with two-thirds the value of the corn attached, allowing him the other third for his rent, in place of finding a verdict for him for rent, and charging him with the whole crop as damages. Substantial justice would be attained that way, with a further allowance in his favor for the oat land, and the corn used by the tenant (which probably they also intended), if in fact the plaintiff got the corn attached. But there does not seem to be sufficient evidence of that. It was *cribbed* on plaintiff's land, but that would naturally be done, for convenience, and to avoid the expense of hauling. It was, from all that appears, and still is, in the custody of the law, and the plaintiff under the evidence, even if the property had been improperly attached, could only be charged for the detention, and any deterioration in value resulting from the attachment. Upon the discharge of the attachment, the right to possession of the corn reverted to defendant, and the presumption is he got it all back. Perhaps the evidence, though not preponderating that way, might support the *value* of defendant's share, if it had been shown that he lost it entirely, but the evidence does not authorize the mode of adjustment adopted.

Patton v. Garrett.

Besides, the evidence does show beyond question, that the defendant had, without the landlord's consent, taken off a considerable part of the corn from the field to his house, a quarter of a mile away, and consumed it for his private purposes. This was unfair to the landlord, as prejudicial to his rights to a fair division. It was within the mischief which the Statute intended to avert, in making it a ground of of attachment, if the tenant should remove the crop, or any portion of it, from the premises, without the landlord's consent. To take it from the field where it grows, to another place rented from the same landlord, and there consume it, is within the spirit and equity of the Statute, as well as fairly within its letter. The crop should be kept on the premises until the rents are adjusted. If the necessities of the tenant should require him to take any considerable portion, before division, it should be by consent of the landlord, who would thus be enabled to protect his interests, by keeping an estimate of the amount consumed. A removal of part of the crop even for honest purposes, without the landlord's consent, will support an attachment. *See Randolph* v. *McCain*, 34 *Ark.*, 696.

*2. SAME: Removing crop.*

The verdict of the jury in finding for defendant on the second issue, and assessing damages against plaintiff, was contrary to the evidence. The first two grounds of the motion were well taken.

The remaining grounds concern instructions. Those given against plaintiff's objections, after fairly stating to the jury the two issues before them, proceed to advise them, that if they find for the defendant, on the second, they must assess his damages for the false attachment, and should arrive at the amount by ascertaining the value of the corn *that belonged to the defendant* at the time it was taken, and a reasonable attorney's fee for defending the suit.

II. That if the defendant rented the land for one-third

39—37

of the crop, plaintiff could only recover a third of that actually produced, without regard to the manner of cultivation.

III.   That if they should find against the grounds of the attachment, then the plaintiff should not recover the value of his third in money, until after the time had passed for the delivery of one-third of the crop, and failure to do so.

The court refused, on plaintiff's motion, to instruct the jury as follows :

"If you find the defendant had removed the crop, or any portion thereof, from the premises, without the consent of plaintiff, you should find for plaintiff in the attachment issue."

3. LAND-
LORD AND
TENANT:
[Measure
of rent
when in
kind.
It is obvious, for reasons already given, that the first instruction on the part of defendant, as to the measure of damages regarding the crop, was erroneous.   So much of it as regards attorney's fees will be taken up hereafter.   The court also erred in refusing the instruction asked by plaintiff. *Randolph* v. *McCain* (*supra*).

The second instruction for defendant is unobjectionable. It would give rise to interminable litigation, if landlords, leasing on shares, could claim all that would have inured to their benefit, if the tenant had exercised ordinary industry, and judgment in the cultivation of the crops.   The amicable adjustments of rents would be almost exceptional.   The landlord chooses his tenant, and must judge of his skill and fidelity in husbandry, or if he desires assurance on these points, should make special stipulations, or have money rent secured.

4. ———:
Rights
and liabil-
ties of
landlord
when at-
tachment
fails.
The third instruction given for defendant seems obscure. The time had already passed for the payment of rent.   So far as it might impress the jury with the idea, that the plaintiff could recover no money in this action, as the value of his portion of the crop, because he had begun it by false attachment,   before default on the part of defendant to

·deliver a portion of the crop, it does not present a safe rule· ·of practice. Where the landlord has a lien, our Statute authorizes a suit by attachment, whether the rent be due or not, in two cases: First, when the tenant is *about* to ·remove the crop, without paying the rent, and second, when he *has* done so, without the landlord's consent. It would seem to result that, these conditions failing, such a ·suit would be without authority,· and should be ·dismissed. (See *Gantt's Digest, Sec.* 4101.) This result, however, is precluded by *Section* 4104, which provides for staying the trial until the rent be due, and for the dissolution of the attachment in the manner *then* prescribed by law, and for ·the progress of the cause, as an ordinary suit. This Act was passed in 1860. It was not then allowable to contro- ·vert the truth of the sworn grounds of attachment, and it ·could not be shown, therefore, that the case had not arisen for the application of the remedy. It has since been allowed, and it is a question, not without difficulty, whether that being shown, the suit should not be dismissed, as unauthorized, precipitate and vexatious.

The Act was in force, however, when, by the Code, ·another mode was provided for dissolving attachments; that is, by questioning the truth of the grounds. In these cases the law provides that suits shall nevertheless proceed upon their merits. The Code is general, with no reference to suits by landlords. No provision is made for their dis- missal in cases of premature suits, where the grounds of attachment have been found to be false. By the Code, also, as amended in 1871, (See *Gantt's Digest, secs.* 437 *and* ·438,) all creditors were allowed, in certain contingencies, to bring suits with an attachment before the debts become ·due, and there is nowhere any express provision for the dis- missal of suits, in case the grounds of attachment should .not be sustained. The law contemplates the dissolution of

the attachment, with a liability of the plaintiff and his sureties, for damages; and that the suit upon the debt be retained to be tried upon its merits.

Upon a review of our legislation, we think the landlord, in case the grounds of his attachment be found untrue, is subjected to damages, but has the right, however, even in a case of a premature suit, to recover that to which he may be justly entitled, including money value of rents not paid in kind.

5. ATTOR-
NEYS'
FEES:
Not re-
coverable
as damages
on dis-
charge of
attach-
ment.
With regard to the attorneys' fee, it has been held that in cases like this, there is no mode of putting in issue fraud, imposition, malice, or any other tortuous or oppressive design on the part of plaintiff. The issue is only upon the dry ground of the truth or falsity of the grounds stated, and there is no room for damages of a punitory, vindictive, or exemplary nature. Only such can be recovered as are actual, and the natural and direct consequences of the attachment. Do attorneys' fees, incurred in the defense of the suit, or in procuring a dissolution of the attachment, come fairly within the scope of proper and direct, actual damages?

In England, attorneys' fees are taxed as costs in the suit, and allowable in other actions as damages, wherever full costs of a suit may be. In America, generally, the compensation of attorneys is matter of contract between attorney and client, and in no sense costs of the suit. They are proper expenses, and of course allowable in all cases where punitory or exemplary damages may come in. But as to whether they are necessary and direct damages in ordinary cases, the American authorities are in conflict. The difference of opinion has arisen principally in suits by vendees, under covenants of warranty, seeking to recover damages for eviction by suit, claiming attorneys' fees as part of the

expenses incurred from breach of warranty. Some of the courts have held them to be recoverable, and some not. (See the matter discussed, and the cases cited in *Turner* v. *Miller*, 42 *Tex.*, 418; *S. C. 19th, Am. Rept's, p.* 47.) We acknowledge the difficulty of seizing upon any clear principle upon which the mind can unhesitatingly rest, to determine the question either way.

We think, however, that the weight of authority and the better reason is in favor of discarding such claims, as the proper, natural and direct consequences of a suit improperly prosecuted, but without malice or on improper motive. Laws which give remedial rights should not too greatly imperil those who honestly seek them. The occasional necessity for the payment of attorneys' fees may be a misfortune, but it is one of the risks which citizens assume as the price of a government by law, instead of one by violence and caprice, or none at all; and as in case of other burdens, it is better that each should assume the risk for himself than to cast it upon those who honestly, though mistakingly, appeal to the courts for a vindication of their supposed rights. There is also an inconvenience, with danger of injustice, in applying a different rule to the case of a false attachment. The same attorney usually defends the suit upon its merits, and the suit may be properly brought. How much of the attorney's compensation results from opposing the attachment, as distinct from the suit, is not easily apportionable, and that portion is the utmost to which the defendant can be entitled. He certainly cannot throw upon the plaintiff the whole cost of defending a meritorious suit, because the plaintiff had made a mistake in seeking an ancillary remedy. In harmony with these views, this court has heretofore held in the case of *Oliphint* v. *Mansfield*, 36 *Ark.*, 191, that counsel fees are not allowable on the dissolution of an injunction.

We do not think, therefore, that the attorney's fees of defendant should, in the same action under the statutory proceeding, be acknowledged as damages; and that the court erred in its instructions.

Because of the instructions erroneously given and refused, and because the verdict was not sustained by evidence, the court erred in overruling the motion for a new trial.

Reversed and remanded for further proceedings, with the usual order.