## ARGUED AND DETERMINED

IN THE

# SUPREME COURT OF ARKANSAS,

AT THE

## DECEMBER TERM, A. D. 1868.

---

### Moody *v.* Hawkins.

$\frac{25}{62}$ $\frac{191}{380}$

USURY. Where the action is upon a writing obligatory for the payment of money, and the plea sets up that it was *agreed* between the parties thereto that it should be paid in *Confederate money*, which, at the time the contract was made, was worth but *twenty cents* on the dollar. *Held*, that the plea sets up a parol contract *different* in terms from that declared upon, and which presents *no valid defense* to the action.

PLEA OF USURY. The *plea* of usury must always *aver* the *intention* to take or reserve more than the legal rate of interest.

Where the contract, by its terms, does not import usury, it must be *proved* that there was some *corrupt agreement*, device or shift to cover usury.

The fact that a contract in terms payable in so many dollars, and drawing ten per cent. interest, was *in fact* agreed to be paid in Confederate money, which was greatly depreciated, is *not* alone *sufficient* to *prove* an *intention* to reserve more than the legal rate of interest.

*Appeal from Pulaski Circuit Court.*

Hon. LIBERTY BARTLETT, Circuit Judge.

CLARK, WILLIAMS & MARTIN, for appellant.

This case, so far from being the *same* as that presented in *Roane v. Green & Wilson*, or *Hastings v. White*, is one in which the appellant bases his right to relief upon an act of the Legislature of Arkansas, which grew out of those very decisions; which was designed, and, as we insist, did relieve parties bound by Confederate money contracts from the hardships imposed upon them by the *then* existing law, as declared in those cases.

Conceding the correctness of those decisions, under the law as it then stood, such concession does not in the least militate against the appellant's right to relief under the law as it existed at the time the decision was rendered in this cause in the court below.

The act in question is impeached upon the sole ground that it " *impairs the obligation of a contract.*"

We think it is manifest beyond all question, that the act of March 5, 1867, does not, even in the most remote degree, affect the *contract entered into* between Moody and Hawkins.

STILLWELL & WASSELL, for appellee.

The only question presented by this record is, did the circuit court err in overruling the pleas?

The question involved, so far as it arises upon the *first* plea, has been fully settled. See *Roane v. Green & Wilson, 24 Ark., 210.*

We can not determine what the second and third pleas are, or were intended to be. They are, to a certain extent, the same as the first plea; but the latter part seems to be intended as pleas of *usury*. In other words, the matters set up are, first, no consideration, or an insufficient consideration; second, that the contract was usurious. Two separate and distinct defenses, that, if properly pleaded, could not be presented by one *plea*.

So far as the pleas seek to set up a want of consideration, and to lay a foundation for the introduction of parol testimony, they fall within the case of *Roane v. Green & Wilson.*

As pleas of usury, they utterly fail to come up to the requirements of the law. No *corrupt intent* is alleged in either. 4 *Ark.*, 44; *McFarland v. The State Bank*, 5 *Ark.*, 195; *Reed v. State Bank*, *ib.*, 193.

Whether any contract is usurious or not, is not a question of fact to be left to a jury, but a conclusion of law drawn from the facts.

If issue had been taken to these pleas, not only would the jury have to pass upon the testimony, but also the law of the case.

Moody, doubtless, relies upon the act for the relief of persons bound by contract for the payment of Confederate money, *Acts of* 1866–7, 195, to sustain the first plea.

Upon this subject we have but little to say further than that if the passing of this act by the Legislature was not an attempt to impair the obligation of contracts, we have never seen one.

HARRISON, J.

This is an action of debt by Jacob Hawkins against Francis H. Moody, on three writings obligatory, each payable one day after date, and bearing ten per cent. interest from date, until paid. The defendant filed three special pleas, to all of which the plaintiff demurred. The court sustained the demurrers and rendered jugdment for the plaintiff, and the defendant appealed.

The first plea, which is a special *non est factum*, and extends to all the counts, to show that the instruments sued on are not the acts and deeds of the defendant, alleges that, when the writings obligatory were executed, the county of Pulaski, where the transactions took place, was held and occupied by the Confederate forces and Confederate States notes were and had been for a long time previously, in all business transac-

13

tions, the customary, commonly recognized, and almost universal circulating medium in it; that the parties had reference in their execution to that fact, and intended that they should be paid in that currency, and that such notes were then worth, in United States currency, only about twenty cents on the dollar.

The demurrer to this plea presents the same question decided by this court in the cases of *Roane v. Green & Wilson*, 24 *Ark.*, 210, *and Hastings v. White, ib.,* 269. In these cases the court held that the defense merely set up a parol contract, different in terms from that declared upon, and which, no matter how pleaded, could present no valid defense to the action; of the correctness of which decisions there can be no doubt.

The second plea is to the second count only, and is as follows: " And for a further plea in this behalf, said defendant, as to said second count, in said declaration contained, says *actio non*, because he says that said writings obligatory, therein mentioned, were executed to secure to said plaintiff the repayment to him of amount due for one thousand dollars in ' Confederate money,' or ' Treasury notes of the Confederate States of America,' at the nominal value represented on the face of said notes, then loaned by him ·to said defendant, (and said loan was the sole consideration for the same,) and that said notes were then greatly depreciated in value, and worth in gold or United States currency, only about twenty per centum of said nominal value thereof, and that said writings obligatory, according to the tenor and effect thereof, as set forth in said count, was founded upon a contract for the reservation of more than ten per centum interest for forbearance on said loan, contrary to the form of the statutes in such cases made and provided, and was corrupt, usurious and void." And the third plea, which is to both the first and third counts, sets up the same defense, and is exactly similar to the above, except it states that the consideration of the writings obligatory, mentioned in these counts, were like sums of " Confederate money," found to be due the plaintiff upon settlement of accounts be-

tween him and the defendant. The demurrers to these pleas may be considered as general.

The intention to take or reserve more than the legal rate of interest is an essential ingredient in all usurious contracts, and must always be averred in a plea of usury. *Thompson & Rawles v. Real Estate Bank*, 5 *Ark.*, 59 ; *McFarland v. The State Bank*, 4 *Ark.*, 44; *McFarland v. The State Bank*, *ib.*, 410 ; *Reed, et al., v. The Bank of the State*, 5 *Ark.*, 193.

Where the contract by its terms does not import usury, as by an express reservation of more than legal interest, and is on its face for legal interest only, " it must," as Judge Story remarked in the case of *The Bank of the United States v. Waggoner, et al.,* 9 *Pet. R.,* 378, "be proved that there was some corrupt agreement, or device, or shift, to cover usury; and that it was in full contemplation of the parties." The writings obligatory declared upon do not reserve more than legal interest, and appear upon their face to be valid contracts. The defendant attempts to invalidate them by setting up in their stead other *corrupt* and *illegal* contracts. The fact that Confederate money was greatly depreciated, is not alone sufficient to prove an intention to reserve more than the legal rate of interest and the contracts, consequently, corrupt and void. The pleas contained no averment that the plaintiff knew of such depreciation, nor of any other fact conducing to show a corrupt agreement, device or shift to cover usury. · The Court of Appeals of Virginia, in the case of *Brockenbrough's exrs. v. Spindle's admrs.,* 17 *Grat.,* 21, say : "A man must *knowingly* and *intentionally* commit the acts which constitute the usury, but the law presumes that he intended the necessary consequence of these acts and presumes, even, in opposition to the fact that he knew those acts were usurious and unlawful." The allegation that more than the legal rate of interest was reserved may be true, yet, unless the plaintiff intended to do so, the contracts are not usurious, and the allegation that the contracts were "corrupt, usurious and void," is but a conclusion drawn from facts that do not support it. In *Hill v. Montague,*

2 *Maule & Selwyn*, 377, the defendant pleaded that the bond was executed in pursuance of a certain corrupt contract, made at a time and place specified, between the plaintiff and defendant, by which there was reserved above the rate of £5 for the forbearance of £100 for a year, contrary to the statute, &c., upon a demurrer to the plea. The court held it bad for not setting forth particularly the corrupt contract and the usurious interest; and BAYLEY, J., observed that he had " always understood that the party who pleads a contract must set it out, if he be a party to it."

We are of opinion that the pleas contain no statement of such facts or circumstances as show a design or purpose to reserve more than the legal rate of interest, and that the demurrers were rightly sustained.

Judgment affirmed.