GARVIN v. LINTON.

Opinion delivered April 25, 1896.

CONTRACT—WAIVER.—One to whom new notes have been delivered in lieu of old notes and a mortgage for the purpose of purging the original transaction of usury, under an agreement that a mortgage shall subsequently be given to him to secure the new notes, may waive such security and rely upon the notes alone.

USURY—ENTIRETY OF CONTRACT—NEW PROMISE.—A usurious contract cannot be divided into separate and distinct contracts, so that one obligation shall be given for the money actually loaned and another for the excessive interest. Each obligation is a part of the same contract, and both are void. Neither can a promise to pay any part of a usurious debt be enforced without consent, so long as the original contract which supports it remains unrevoked.

SAME—NEW PROMISE.—The parties to a loan of money which is usurious may cancel the old contract, purge the consideration of usury, and make it the basis of a new obligation which will be binding upon the borrower.

SAME—INTENT.—A concurrence of the intent of both parties is not an essential element of usury, under Sand. & H. Dig., sec. 5085, making void all notes and other contracts whereby there shall be reserved, taken, or secured any greater sum or value for the loan or forbearance of any money or other valuable thing than is prescribed by the act. (BUNN, C. J., dissenting.)

SAME—RESERVING INTEREST BY MISTAKE.—There is no usury in a contract in which excessive interest is reserved through mistake of fact on part of the lender; but such excess is not recoverable.

Appeal from Searcy Circuit Court.

BRICE B. HUDGINS, Judge.

*J. C. Floyd* and *Crump & Watkins*, for appellant.

1. Instruction No. 1 is not sustained by any authority, ancient or modern. After usurious securities have been destroyed by mutual consent, a promise by the borrower to repay the principal and legal interest is founded on a sufficient consideration, and is binding. 17 Ark. 138; 3 Am. Dec. 273; 10 Wheat. 368; 1 Campbell, 165; 2 Taunt. 184; 19 Johns. 447; 4 Denio, 104; 13 Wend. 505; 53 Iowa, 719; Perley, Int. 247.

2. To constitute usury there must be a corrupt intent and the knowingly receiving and demanding a rate in excess of the legal rate. A mere failure by mistake or miscalculation to deduct all the usurious charge will not render the new contract usurious.

*S. W. Woods* and *Carmichael & Seawel*, for appellee.

1. Was the agreement founded on a sufficient consideration? The case in 17 Ark. 138 would seem to sustain the contention of appellant. But it was not necessary to pass on that question, as that kind of a case was not before the court. Under our laws, a usurious contract is absolutely void, and no moral consideration exists. In those states where the equitable rule is enforced to pay back the principal with legal interest, the creditor must first cancel all of the securities, and then the promise of the debtor becomes binding. The promise must be *subsequent* to the cancellation and destruction of the original securities. In this case the original securities were existing and alive at the time of the alleged agreement, and they have never been cancelled or destroyed. 13 Wend. (N. Y.), 505; 53 Ark. 346; Bish. Cont. (Enl. Ed.), sec. 614.

2. If the agreement is valid, the creditor must deduct all the usury; and if a part of the original usury remains, the new agreement is void. 17 Ark. 138; Tyler

on Usury, p. 397; 22 N. J. Eq. 606. Even if the court erred in its first instruction, this is no cause of reversal, as the appellant was not entitled to a verdict upon any state of case. 57 Ark. p. 251, last paragraph.

3. The new agreement was never completed. The execution of the note and mortgage was an entirety. The agreement must be mutual, complete, and equally binding on both parties. 30 Ark. 194; 22 *id.* 160; 52 *id.* 262.

4. It is generally competent to rebut the presumption of intent by showing that the excess of interest was a mistake. But it must be shown to be a mistake; it will not be presumed. 87 N. Y. 50; 28 Ind. 452. The delivery of the old securities to Bailey was not a delivery to appellee. Dan. Neg. Inst., sec. 63.

BATTLE, J. F. M. Garvin commenced an action against I. N. Linton on a note executed to him by the defendant for $240, and ten per cent. per annum interest from date until paid. The note was dated May 2, 1892, and was due two years after date, provided the interest, as evidenced by coupons, was paid annually. In the event the interest was not promptly paid when due, the principal of the note and all interest accrued thereon were then to become payable at the election of the legal holder of the note.

The defendant answered, and denied that the note had ever been delivered to the plaintiff, the payee, and alleged that it was without consideration, and was usurious and void.

On a trial of the issues in the action, there was a verdict for the defendant, and a judgment against plaintiff for costs, from which he has appealed to this court.

The following facts were proved in the trial: Some time in December, 1887, appellee procured a loan of $405 from appellant, for which he executed to the lender

his note for $450, and a mortgage to secure the same. Two or three annual payments of interest were made. About the latter part of May, 1892, appellant and appellee agreed that the note for $450 should be purged' of all usury, and that $25 for an attorney's fee should be deducted from the amount remaining unpaid, and two new notes for the remainder and ten per cent. per annum interest thereon, due and payable two years after date, should be executed by the appellee to the appellant, together with a mortgage to secure the payment. In compliance with this agreement, the appellee executed the note sued on, and another for $200; it having been represented by appellant's agent, and believed by him, that the amount of these notes was the sum of the $450 and ten per cent. interest thereon remaining unpaid after it had been purged of all usury, and the $25 had been deducted.

The appellee testified that he delivered the two notes to John W. Andrews, the agent of the appellant, to be delivered to DeRoos Bailey, to be held by him until appellee should deliver to Bailey a mortgage signed and acknowledged by himself and wife, to secure the same, when they were to be exchanged for the note for $450 and the first mortgage; but the appellee failed to execute the mortgage to secure the new notes, because they were for a larger amount than was due according to the compromise.

Andrews testified that the two notes were delivered to him as the agent of the appellant, and that there was no understanding that they should be delivered to Bailey, but that it was agreed that appellee would, within ten days, deliver to Bailey a mortgage, signed and ackowledged by himself and wife, securing the two notes, to be exchanged for the old notes and mortgage; that appellant decided to accept the new notes in payment of the old, although the mortgage to be delivered should never

be executed, and delivered the old note and mortgage to Bailey, who was the attorney of the appellee.

Bailey testified that it was agreed, by and between the agent of appellant and appellee, that the new notes were to be delivered to Andrews, as appellant's agent, and that appellee would deliver to him a mortgage to secure them, to be exchanged for the old note and mortgage, which were to be delivered to and held by him until the new mortgage was received, when the exchange was to be made; that this was to be done within ten days; that the old note and mortgage were delivered to him soon after the agreement, but the new mortgage never was; and that he was the attorney of the appellee in the adjustment and litigation of this indebtedness.

Upon this evidence the following instructions were given to the jury by the judge :.

"Gentlemen of the jury :   This is a suit brought by the plaintiff against the defendant on a promissory note. The defendant admits the execution of the note, and pleads usury and no consideration.   The burden is on the defendant.   Before you will be authorized to find for the defendant, you must find that he has established one of these pleas by a preponderance of the testimony.

"(1)   If you believe that these notes were executed in consideration of the cancellation or return to the defendant of certain notes and mortgages executed by this defendant to the plaintiff, and that said notes and mortgage which were to be returned were usurious, you will be authorized to find for defendant.

"(2) I further instruct you that if you find that the notes sued on were in lieu of certain notes and mortgage given by this defendant to the plaintiff, and said original notes and mortgage were to be returned to this defendant upon the execution of a new mortgage by this defendant to secure the payment of said new notes, and that these new notes were executed by the defendant, with

the understanding from the plaintiff, or his agent, that all of the usurious part of the old notes had been eliminated, and that the new notes were drawn for an amount equivalent to the old notes, less the usury, and that the defendant ascertained, soon after the signing of said notes, that all the usurious part of the old notes had not been taken out, but that a part of the same had been put in the new notes, this would excuse the defendant for not complying with his agreement in executing the mortgage and lifting the old note and mortgage, and you will be authorized to find for the defendant."

In the instructions of the court, the new notes were treated as duly executed, and the only questions submitted to the jury were, were they without consideration? and were they usurious? According to the preponderance of the evidence, they were delivered to the appellant, and nothing remained to carry into effect the compromise, except the execution of the mortgage. Appellant performed his part of the agreement as to the exchange of writings, and thereby became entitled to hold the new notes, and to the mortgage to secure them, provided the notes were not affected by usury, or void for fraud. The fact that appellee refused to execute the mortgage did not affect his right to the notes. It was to be a security for the payment of the notes, and for the exclusive benefit of the appellant, and he had the right to waive it, which he did.

*Right to waive part of contract.*

It is ordained by the constitution of this state that all contracts for a greater rate of interest than ten per cent. per annum shall be void as to principal and interest. The express contract being void, no implied obligation can arise from it. It cannot be divided into separate and distinct contracts, so that one obligation shall be given for the money actually loaned, and another for the excessive interest. Each obligation is a part of the same contract, and both are void. Neither can a promise to pay

*Usurious contract is indivisible.*

any part of a usurious debt, for the same reason, be
enforced without consent, so long as the original con-
tract which supports it remains unrevoked. The taint
of usury in the old contract infects the new promise.
This is not true of usurious contracts to pay a pre-exist-
ing valid debt. That debt is not destroyed by the
usury. It may be recovered on the strength of the con-
tract which created it. But, where the contract on
which it depends in the beginning for existence is usuri-
ous, there was never anything to give it life, and to sup-
port an action for its enforcement. But if the debt be
for money loaned, and actually received by the debtor,
there is an equitable and moral duty to pay it, which,
while the law will give it no effect, may be made the
consideration of a new promise. The parties can cancel
and destroy the old contract, purge the consideration of
usury, and make it the basis of a new obligation, and
thereby bind the borrower, in law and equity, to pay the
money actually received, and a legal rate of interest.
*Hammond* v. *Hopping*, 13 Wend. 505, 511; *Early* v.
*Mahon*, 19 Johns. 147; *Miller* v. *Hull*, 4 Denio, 104;
*Phillips* v. *Columbus City Building Association*, 53
Iowa, 719.

To constitute usury in this state, there must be an
intention to take or receive more than ten per cent. per
annum interest. But need there be a concurrence of
intent of both parties,—that is to say, on the part of the
borrower to pay, and of the lender to receive,—to consti-
tute usury? Many authorities hold that "it is not
enough that the borrower intended to make a usurious
agreement, but the intention to take the usury must
have been in the full contemplation of the parties,—not
of one party, but of both,—to the transaction. There
must be an *aggregatio mentium.*" *Price* v. *Campbell*,
2 Call, 110; *Smith* v. *Beach*, 3 Day, 268; *Smythe* v. *Allen*,

*Usury purged
by new prom-
ise.*

*As to intent
in usury.*

67 Miss. 146; *Morton* v. *Thurber*, 85 N. Y. 550; *Guggen-heimer* v. *Geiszler*, 81 N. Y. 293; Tyler on Usury, p. 103.  While others say that if the lender knowingly contracts for an illegal rate of interest, the contract is usurious, although the borrower is ignorant of the facts. *First National Bank* v. *Plankington*, 27 Wis. 177; *Lukens* v. *Hazlett*, 37 Minn. 441; *Wright* v. *Elliott*, 1 Stew. (Ala.), 391; *Craig* v. *Pleiss*, 26 Pa. St. 271.

In *Price* v. *Campbell*, *supra*, the court, taking the former view of the question, says that usury "presupposes the consent of both borrower and lender to this effect; and without it there is no usurious contract, whatever may be the hopes, wishes, or expectations of either party."

In *Lukens* v. *Hazlett*, *supra*, the court takes the other view, and Mr. Justice Mitchell, speaking for it, says:  "There are some loose statements in the text books, and perhaps some judicial authority, to the effect that, to render a contract usurious, both parties must be cognizant of the fact constituting usury, and must have a common purpose to evade the law.  But it seems to us that it would be contrary both to the language and policy of the usury law to hold any such doctrine, as thus broadly stated.  These laws are enacted to protect the weak and necessitous from oppression.  The borrower is not *particeps criminis* with the lender, whatever his knowledge or intention may be.  The lender alone is the violator of the law, and against him alone are its penalties enacted.  It would indeed be strange if the only party who could violate the law had intentionally done so, and could escape its penalty because, by some device or deception, he had so deceived the borrower as to conceal from him the fact that he was taking usury."

We have not been able to find any case in which the question has been presented to, or determined by, this

court. We find many expressions, in cases decided, as to what is necessary to constitute usury, but nothing decisive of the question.

We have a statute upon the subject which seems to have been enacted to settle the question in this state. It provides: "All bonds, bills, notes, assurances, conveyances, and all other contracts or securities whatever, whereupon or whereby there shall be *reserved, taken or secured, or agreed* to be taken or reserved, any greater sum or greater value for the loan or forbearance of any money, goods, things in action, or any other valuable thing, than is prescribed by this act shall be void." Sand. & H. Dig., sec. 5085.

Similar statutes have been in force and construed in other states. In *Craig* v. *Pleiss*, 26 Pa. Stat, 273, the court, in speaking of a statute in some respects like ours, says: "This idea of a corrupt contract which expressly stipulates for more than six per cent. is derived from the English statutes which were never in force here. The statute of 37 Henry VIII, c. 9, which fixed the rate of interest in England at ten per cent.; the statute of 21 Jac. I, c. 17, which reduced it to eight per cent.; the statute of 12 Car. II, c. 13, which reduced it to six per cent., and the statute of 12 Anne, c. 16, which reduced it to five per cent,—all use the expression 'corrupt bargain, loan, or exchange,' in defining the offense, and the adjudications under these statutes are often quoted here, without adverting to the fact that our statute contains no such expression. 'No person shall directly or indirectly, for any bonds or contracts to be made after the publication of this act, take for the loan or use of money, or any other commodities, above the value of six pounds for the forbearance of one hundred pounds on the value thereof, for one year, and so proportionably for a greater or lesser sum.' And then comes the definition of the offense,—'if any person or persons

whatsoever do or shall *receive or take* more than six pounds per cent. per annum or any such bond or contract as aforesaid, upon conviction thereof,' &c. There is not a word here about corrupt bargains or contracts. Any bonds or contracts may be the subject of usurious payments. The offence consists not in *bargaining* for more than six per cent., but in *taking* it on any bond or contract. * * * The imagined necessity, then, of a corrupt bargain to complete the offence of usury, favored as it no doubt has been by loose expressions of judges, is wholly without foundation in our statute."

In *Wright* v. *Elliott*, 1 Stew. (Ala.), 393, the court, in construing an Alabama statute, says: "The words of the statute are, 'No person or persons shall, upon any contract whatsoever, *take* directly or indirectly for the loan of any money, wares, merchandise, etc., more than the rate of eight dollars for the forbearance of one hundred dollars, etc. It is true that in this case there was no contract between the parties by which the defendants *agreed to pay* the plaintiff more than legal interest; but it is equally true there was a contract between the parties, and that in that contract the plaintiff did *take* more than eight per cent. Can it be possible that the circumstance of his having circumvented the defendant, by inducing him to believe that the note was drawn for the amount due on the executions, when it was for a much greater, and thus adding fraud to injury, shall operate to his advantage? For it will be recollected that under the plea of usury the defendant can testify; not so when he pleads fraud. Certainly it cannot. To permit him to do so would be subversive of a fundamental principle of the common law, 'that no man shall take advantage of his own wrong.'"

According to those decisions there need not be, under our statute, a mutual agreement to give and receive unlawful interest to constitute usury. If it be

actually "reserved, taken, or secured, or agreed to be taken or reserved," the contract is void for usury. As it may be reserved, taken, or secured by contract without the knowledge of both parties, a concurrence of the intent of both of them is not an essential element of usury, under the statute.

Effect of re-
serving usury
by mistake. There must be an intent to take unlawful interest, to constitute usury. There can be no usury when the amount taken in the contract for interest in excess of ten per cent. per annum was reserved through a mistake or ignorance of the fact that it was in such excess. If the lender, by mistake of fact, by error in calculation, or by inadvertance in the insertion of a date, contracts to receive an illegal rate of interest, "such mistake, error or inadvertance will not stamp the taint of usury on such engagement, nor cause to be visited upon him, who did not knowingly and intentionally disregard the law in this behalf, the highly penal consequences of an usurious offense." *Moody* v. *Hawkins*, 25 Ark. 191; *German Bank* v. *DeShon*, 41 Ark. 331.

In the case before us the parties undertook to rescind the old note and mortgage, and agreed that appellee should execute to the appellant two notes for the money actually loaned, and ten per cent. per annum interest thereon from the day it was received, less the payments made, and $25 for attorney's fees, and a mortgage to secure the notes. Appellant undertook to ascertain what the principal of the notes should be, and they were executed for the amounts he represented to be due according to the agreement. Upon what basis he made his calculation to ascertain this amount does not appear. The evidence as to the payments made on the old note is unsatisfactory. Appellee says that he made two or three payments of interest. How much or when is not stated. According to the evidence, appellant could well have taken the two notes without knowingly

and intentionally reserving or securing thereby unlawful interest. If he did so, the notes were not void, except as to the excessive interest; and he was entitled to recover the amount lawfully due.

The instructions given by the court to the jury are not in harmony with this opinion; and are therefore erroneous. Reversed and remanded.

---

OPINION ON MOTION FOR REHEARING.

Delivered November 14, 1896.

In the opinion in this case it is said: "According to the evidence, appellant could well have taken the two notes without knowingly and intentionally reserving or securing thereby unlawful interest. If he did so, the notes were not void, except as to the excessive interest, and he was entitled to recover the amount lawfully due." This was based on the testimony of appellee, in which he said he made two or three annual payments of interest on the note for $450. Upon him devolved the burden of proving usury. He was unable to say that there were more than two annual payments of interest. Assuming there was no more, no usury was proved as to the note sued on, and the conditions on which it was given were performed.

But it is said that the court erred in holding that the taking of unlawful interest by a lender through a mistake of fact would not render the note sued on void, except as to the excessive interest. Appellee contends that when parties undertake to cancel a contract, and purge its consideration of usury, and when so purified make it the basis of a new contract, and for any reason fail to cleanse it of usury, the new contract, like the old, is void. We have carefully examined the authorities cited by him, and fail to see wherein they support this contention. In none of them does it appear

that the parties to a usurious contract, in attempting to eliminate the usury, retained in the new contract a part of the excessive interest through a mistake of fact. They hold that the latter contract is void, if what the parties have thereby knowingly or intentionally done or undertaken to do constitutes usury. That is true. But the case is different when the element which constitutes usury is made a part of the new contract by a mistake of fact. In such a case the usurious element was not actually intended to be a part of the contract—was really no part of it—and can and should be eliminated to make the contract speak the truth. The validity of the new contract is subject to the same test as that of other contracts, and usury incorporated in it through a mistake of fact will not taint it, any more than it would had its consideration never been the basis of any other contract. For the same reason, the mistake in the contract should be corrected in both cases.

The motion for a rehearing is denied.