### BROWN et al. v. GRUNDY et al.

(Circuit Court, E. D. Arkansas, E. D. October 8, 1901.)

1. FEDERAL COURTS—FOLLOWING STATE DECISIONS—USURY.

Upon the question of usury, which is statutory, the federal courts follow the decisions of the state courts.[1]

2. USURY—INTENTION—ARKANSAS STATUTE.

Under the usury laws of Arkansas, as construed by the supreme court of the state, a mutual agreement to give and receive unlawful interest

---

[1] State laws as rules of decision, see notes to Griffin v. Wheel Co., 9 C. C. A. 548; Wilson v. Perrin, 11 C. C. A. 71; Hill v. Hite, 29 C. C. A. 553.

is not necessary, to constitute usury, but there must have been an intention on the part of the lender to take or receive more than the legal rate of interest. That the contract requires the payment of a sum in excess of the principal of the debt and legal interest thereon, through a mistake of fact or an error in calculation, will not render it usurious.

## In Equity.

This is a bill to foreclose two deeds of trust in the nature of mortgages on real estate and some personalty, all lying and situated in this state. The defendants, the mortgagors, deny the validity of the mortgage and indebtedness, setting up the plea of usury. They also filed a cross bill setting up the fact that the debt secured by the mortgage is usurious and void, and they ask that the mortgage be canceled as a cloud on their title, in conformity with the statutes of the state of Arkansas hereinafter set out. The facts, as they appear from the testimony, which is practically undisputed, are that the complainants are commission merchants in the city of Memphis, Tenn., and the defendant Henderson Grundy a farmer in the state of Arkansas. In April, 1897, the defendant applied to the complainants for money to enable him to pay off his mortgage indebtedness to another commission house, and also to supply him such goods, wares, merchandise, and money as would be necessary to enable him to raise a crop on his farm the ensuing year. It was estimated that $1,200 would be sufficient to do that, whereupon he executed a note for $1,200 to complainants, and, to secure the same, executed one of the mortgages now sought to be foreclosed. The rate of interest was agreed on in writing to be 10 per cent. per annum. The account was kept on the books of complainants as if no note had been executed, which, it appears, is usual and customary in dealings of this kind. On December 3, 1897, defendant applied to the complainants for another loan of $1,200, with which to purchase another tract of land, for which he also executed a note secured by a trust deed on the land so purchased, to bear 10 per cent. interest per annum; but this $1,200 was again charged on the books of complainants as the money was furnished, regardless of the note. In March, 1898, a settlement was had between the parties, and it appeared that the defendant owed the complainants the sum of $3,383.41, and it was estimated that it would require further advances to the extent of about $500 to enable him to raise a crop that year. Thereupon the parties agreed that the first $1,200 note and mortgage should remain as it was, and for the balance, including the $500 to be advanced, he was to execute a new note amounting to $2,683.41, and, to secure it, a mortgage on all the lands. On one of the tracts mortgaged to complainants there was an indebtedness of $500 due for the purchase money, which was a prior lien to the mortgage, and which at maturity was paid off by complainants. The debt not having been paid, these proceedings were instituted; and the sole issue is whether the note executed in March, 1898, when the settlement was had, was not usurious by reason of including interest which exceeded 10 per cent. per annum.

The laws of Arkansas relating to usury, published in Sandels & Hill's Digest of the Statutes of Arkansas, are as follows:

"Sec. 5084. All contracts for a greater rate of interest than ten per centum per annum shall be void as to principal and interest, and the general assembly shall prohibit the same by law. Const. art. 19, § 13.

"Sec. 5085. All bonds, bills, notes, assurances, conveyances, and all other contracts or securities whatever, whereupon or whereby there shall be reserved, taken or secured, or agreed to be taken or reserved, any greater sum or greater value for the loan or forbearance of any money, goods, things in action, or any other valuable thing, than is prescribed in this act shall be void.

"Sec. 5086. Every lien created or arising by mortgage, deed of trust or otherwise, on real or personal property, to secure the payment of a contract for a greater rate of interest than ten per centum per annum, either directly or indirectly, and every conveyance made in furtherance of any such lien is void; and every such lien or conveyance may be cancelled and annulled at the suit of the maker of such usurious contract, or his vendees,

assigns **or creditors.** The maker of a usurious contract may by suit in equity against all parties asserting rights under the same, have such contract and any mortgage, pledge or other lien, or conveyance executed to secure the performance of the same, annulled and cancelled, and any property, real or personal, embraced within the terms of said lien or conveyance, delivered up if in possession of any of the defendants in the action, and if the same be in the possession of the plaintiff, provision shall be made in the decree in the case removing the cloud of such usurious lien and conveyance made in furtherance thereof, from the title to such property. And any person who may have acquired the title to, or an interest in, or lien upon such property by purchase from the makers of such usurious contract, or by assignment or by sale under judicial process, mortgage or otherwise, either before or after the making of the usurious contract, may bring his suit in equity against the parties. to such usurious contract, and any one claiming title to such property by virtue of usurious contract, or may intervene in any suit brought to enforce such lien, or to obtain possession of such property under any title growing out of such usurious contract, and shall by proper decree have such mortgage, pledge or other lien, or conveyance made in furtherance thereof, canceled and annulled in so far as the same is in conflict with the rights of the plaintiff in the action."

The undisputed evidence shows (and the court so finds the facts) that, **at** the time the settlement was had and the new note executed, the interest actually due, and computed at 10 per cent. per annum, from the respective dates the moneys and supplies were furnished, allowing to the defendant interest at the same rate on all payments made by him, or by stopping the interest on the debt on the amounts thus paid, was $528.16, while the complainants included in the note for interest the sum of $619.04,—a difference of $90.88. This the evidence clearly shows was not intentional on the part of complainants, but was owing to a mistake made by the bookkeeper in calculating the interest. There was no intention on the part of complainants to charge a greater rate of interest than 10 per cent., nor on the part of defendant any agreement to pay the same, except such as arises from the execution of the note and mortgage.

McFarland & Neblett and John J. & E. C. Hornor, for complainants. :

John B. Jones and H. G. Chambers, for defendants.

TRIEBER, District Judge (after stating the facts). Usury being merely a statutory offense, federal courts in dealing with such a question must look to the laws of the state where the transaction took place, and follow the construction put upon such laws by the state courts. De Wolf v. Johnson, 10 Wheat. 367, 6 L. Ed. 343; Scudder v. Bank, 91 U. S. 406, 23 L. Ed. 245; Trust Co. v. Krumseig, 172 U. S. 351, 19 Sup. Ct. 179, 43 L. Ed. 474. It is claimed on behalf of the complainants that the plea of usury cannot be sustained, for two reasons: First, that in order to constitute usury there must be a concurrence of intent of both parties (that is to say, on the part of the borrower to pay and the lender to receive); and, second, that there must be an intent on the part of the lender to take unlawful interest. As to the necessity of consent of both parties, the rule established by the supreme court of Arkansas is that no such consent is necessary. In Garvin v. Linton, 62 Ark. 370, 35 S. W. 430, 37 S. W. 569, Mr. Justice Battle, in delivering the opinion of the court in that case, says:

"Many authorities hold that 'it is not enough that the borrower intended to make a usurious agreement, but the intention to take the usury must have been in full contemplation of the parties—not of one party, but of

111 F.—2

both—to the transaction. There must be an aggregatio mentium.' [Citing authorities to sustain that view.] While others say that, if the lender knowingly contracts for an illegal rate of interest, the contract is usurious, although the borrower is ignorant of the facts. [Citing authorities to sustain that view.]"

After reviewing the authorities on both sides, he states the conclusion of the court to be:

"According to those decisions, there need not be, under our statute, a mutual agreement to give and receive unlawful interest, to constitute usury. If it be actually 'reserved, taken, or secured, or agreed to be taken or reserved,' the contract is void for usury. As it may be reserved, taken, or secured by contract without the knowledge of both parties, a concurrence of the intent of both of them is not an essential element of usury, under the statute."

This is conclusive on this court that the statutes of Arkansas do not require, in order to constitute usury, that there should be a concurrence of intent of the borrower and lender.

As to the second proposition, that there must be an intention to take or receive more than 10 per cent. interest per annum, the decisions of the supreme court of Arkansas are equally conclusive. This question first came before the supreme court in Moody v. Hawkins, 25 Ark. 191. In that case, which was an action on a note, the defendant pleaded usury, but failed to allege that the usurious interest was charged by the lender intentionally. In sustaining a demurrer to this plea, the court say:

"The intention to take or reserve more than the legal rate of interest is an essential ingredient in all usurious contracts, and must always be averred in a plea of usury. Where the contract by its terms does not import usury, as by an express reservation of more than legal interest, and is on its face for legal interest only, 'it must,' as Judge Story remarked in the case of Bank v. Waggener, 9 Pet. 378, 9 L. Ed. 163, 'be proved that there was some corrupt agreement or device or shift to cover usury; and that it was in full contemplation of the parties.' The writings obligatory declared upon do not reserve more than legal interest, and appear upon their face to be valid contracts. The defendant attempts to invalidate them by setting up in their stead other corrupt and illegal contracts. * * * The court of appeals of Virginia, in the case of Brockenbrough's Ex'rs v. Spindle's Adm'rs, 17 Grat. 21, say: 'A man must knowingly and intentionally commit the acts which constitute the usury, but the law presumes that he intended the necessary consequences of these acts, and presumes, even in opposition to the fact, that he knew those acts were usurious and unlawful.' The allegation that more than the legal rate of interest was reserved may be true, yet, unless the plaintiff intended to do so, the contracts are not usurious, and the allegation that the contracts were 'corrupt, usurious, and void' is but a conclusion drawn from facts that do not support it."

The same question came before the court in Garvin v. Linton, supra, and the court, after reviewing the authorities, say:

"There must be an intent to take unlawful interest, to constitute usury. There can be no usury when the amount taken in the contract for interest in excess of ten per cent. per annum was reserved through a mistake or ignorance of the fact that it was in such excess. If the lender, by mistake of fact, by error in calculation, or by inadvertence in the insertion of a date, contracts to receive an illegal rate of interest, 'such mistake, error, or inadvertence will not stamp the taint of usury on such engagement, nor cause to be visited upon him, who did not knowingly and intentionally disregard the law in this behalf, the highly-penal consequences of an usurious offense.'" 62 Ark. 380, 35 S. W. 433.

Of course, these decisions do not go to the extent that there must be an actual intent to violate the statute. Where parties to a contract for a loan knowingly agree to pay and receive more than 10 per cent. per annum for the use of the money borrowed, this, in the sense of the law, is a corrupt agreement. If it be the real intention of the parties to receive or reserve a given rate of interest, and that rate prove to be usurious, the contract will be void for usury, whether the parties knew the interest to be usurious or not. Ignorance or mistake in relation to the law in such a case will and does not afford protection against the consequences of usury. Bank v. De Shon, 41 Ark. 331–339. As the evidence in this case shows that the excessive interest charge was not intentional, for the purpose of securing a higher rate of interest than 10 per cent. per annum, but a mere mistake in the calculation, it is clear that such an error does not constitute usury, within the meaning of the Arkansas statutes, as construed by the supreme court of the state.

The mistake in the calculation of the interest at the time the settlement was had and the last mortgage executed amounts to $90.88, and defendants are entitled to have that sum deducted from the amount of the second note. Deducting this amount, and adding interest at 10 per cent. per annum on the first note and the corrected note, there is now due to the complainants from the defendant, interest calculated to this date, the sum of $4,416.02, for which amount a decree will be entered and a foreclosure ordered. The clerical error in describing one of the tracts of land in the mortgage not being denied, the deed will be reformed so as to describe this tract in accordance with the intention of the parties. The cross bill will be dismissed, and the defendants taxed with the costs of the entire proceeding.