Briggs *v.* Steele.

Opinion delivered June 28, 1909.

1. USURY—WHAT CONSTITUTES.—To constitute usury, there must either be an agreement between the parties by which the borrower promises to pay, and the lender knowingly receives, a higher rate of interest than the statute allows for the loan or forbearance of·money; or such greater rate of interest must be knowingly and intentionally reserved, taken or secured for such loan or forbearance. (Page 461.)

2. SAME—PRESUMPTION.—The wrongful act of usury will never be imputed to the parties when the opposite conclusion can be reasonably and fairly reached. (Page 462.)

3. SAME—CASE STATED.—Where plaintiff purchased goods from jobbers and wholesale dealers and sold them to defendant at a profit of from ten to twenty per cent. on the cost price, the transaction was not usurious if it was made in good faith and not for the purpose of evading the usury law. (Page 462.)

4. MORTGAGES—DEBTS SECURED.—Where a mortgage expressly states that it is given as security for an indebtedness which is specifically named in amount and kind, it cannot be enlarged to cover other indebtedness by a parol agreement made either at the time of its execution or subsequently. (Page 462.)

5. PAYMENTS—APPLICATION.—The rule relating to application of payments is that the debtor at the time of making payment has the primary right to direct the application; if he fails to make such application, the creditor has the right to make it; should he fail to make it, then the law makes it by applying the payment to the oldest items of the account that are payable at the date of the payment. (Page 464.)

Appeal from Lonoke Chancery Court; *John E. Martineau,* Judge; reversed.

*Trimble, Robinson & Trimble,* for appellant.

1. The contract and transactions were usurious and void. There was no sale of goods. Steele was not a merchant. The commission charge was a mere subterfuge to cover usury. Webb on Usury, § 80, p. 88.

2. The two notes to Steele, Sr., were not covered by the mortgage. It was usury to charge ten per cent. commission on the market price of the goods, or money furnished, then 20 per cent., and then adding 10 per cent. interest. Such transactions are illegal, and constitute usury. 12 La. 660; 12 *Id.* 723; 16 *Id.* 239; 5 So. 147; 19 Am. Dec. 449; 35 Ark. 217, 352; 65 *Id.* 92; *Ib.* 370; 33 Barb. (N. Y.) 350; 3 Sandf. Ch. 215.

3. Parol evidence is admissible to show the illegality of a note providing on its face for a legal rate of interest, and to show a contemporaneous verbal agreement to pay an usurious rate of interest. 62 Ark. 92. This illegality can not be cured by crediting the usury. 62 Ark. 217. Our statute makes the loan or forbearance of "goods" or any other valuable thing, as well as money, for a greater rate than ten per cent., usurious. Kirby's Digest, § 5390.

4. Appellant paid $634.12 on the mortgage debt. It was only executed to secure $500.00 and 10 per cent. interest, and the mortgage debt was overpaid by $134.12.

*F. T. Vaughan* and *Palmer Danaher,* for appellee.

1. No illegal interest or commission was charged. Adding the items for interest and commission, they totaled $160.27, or less than 10 per cent.

2. To constitute usury there must be an agreement on the part of the lender to receive and on the part of borrower to give for the use of money a greater rate than 10 per cent. 54 Ark. 566; 83 *Id.* 35. A mere exorbitant price for goods is not usury. 55 Ark. 265. A *sale* of goods is not a loan or forbearance within the usury statutes. 29 Am. & Eng. Enc. Law, 478.

3. No usury was proved, and there is nothing in the record from which it may be inferred. There never was an obligation on the borrower to pay more than ten per cent. Without this there cannot be usury. 29 Am. & Eng. Enc. Law, 481-2. The burden is on the borrower to show usury. 29 Am. & Eng. Enc. Law, 541; 57 Ark. 256. Usury must be clearly proved. 29 Am. & Eng. Enc. Law, 532. The presumptions are all in favor of the validity of the contract. Usury will never be inferred where from all the circumstances an opposite conclusion can be reached. 22 Enc. Pl. & Pr. 452; 74 Ark. 241; 63 *Id.* 249. Where the contract is fair on its face and the evidence doubtful or conflicting, the question of usury is for the trial court or jury, and the findings on this question will not be disturbed on appeal. 22 Enc. Pl. & Pr. 454; 29 Am. & Eng. Enc. Law 542; 55 Ark. 265; 25 Neb. 382.

FRAUENTHAL, J. This was a suit brought by the plaintiff, T. W. Steele, against the defendant, A. B. Briggs, for the foreclosure of a real estate mortgage. The complaint alleged that on January 2, 1905, the defendant executed to plaintiff three notes,

aggregating $500, for merchandise and moneys which were thereafter to be furnished; that plaintiff made such advances to the amount of said notes and also additional advances, upon which was a balance due of $901.16; that on the day of the execution of the notes defendant and his wife duly executed to plaintiff a mortgage upon certain land to secure the above indebtedness. He sought a recovery for the above alleged balance and a foreclosure of the mortgage. The defendant filed an answer, in which he admitted the execution of the notes and mortgage, but in general terms denied that he was indebted to plaintiff and pleaded payment. Subsequently, by way of amendment to his answer, he interposed a plea of usury.

The clause in the mortgage which described the indebtedness which it secured is as follows:

"The foregoing conveyance is on condition that whereas the said A. B. Briggs is justly indebted to the said T. W. Steele in the sum of five hundred dollars for money loaned the said Briggs, as evidenced by three certain promisory notes of date of January 2, 1905, as follows towit: One note for two hundred dollars due and payable January 1, 1906; one note for two hundred dollars due and payable on or before January 1, 1907; and one note for one hundred dollars, due and payable on or before January 1, 1908, each note bearing interest at the rate of ten per cent. per annum from date until paid.

"Now if the said A. B. Briggs shall pay or cause the said notes to be paid with interest, according to the tenor and effect thereof, then this instrument shall be null and void."

The only evidence adduced in the trial of the case was the testimony of the plaintiff and his book-keeper. They testified to the correctness of the indebtedness claimed by plaintiff, and that sometime before the institution of the suit the defendant examined with them each item of the indebtedness and admitted and agreed to its correctness; and that defendant promised to arrange the matter by executing to plaintiff a deed to the land and receiving from the plaintiff a bond for title therefor, which in effect would have given defendant time in which to make redemption from such conveyance; and they testified that instruments of writing were drafted in accordance with that promise, but that afterwards defendant failed and refused to comply with that promise.

It would appear from the testimony that at the time of the execution of said notes and mortgage the defendant was only indebted to the plaintiff in the sum of $30.69, and that the notes and mortgage were given to cover merchandise and moneys which plaintiff would thereafter advance. The three notes were executed respectively for $200, $200 and $100, and matured respectively on January 1, 1906, 1907 and 1908, and each of the notes bore ten per cent. interest from date. The plaintiff furnished to defendant from time to time during the above years merchandise and moneys upon the consideration of said notes, and also furnished merchandise and moneys in addition thereto, and this additional indebtedness, together with the advancements made on the notes, amounted to the aggregate sum of $1,192.65. In addition to the claims for indebtedness for the said merchandise and moneys, the plaintiff testified that defendant owed for two notes which had been executed by defendant to the father of plaintiff on January 1, 1900, and which notes were then the property of plaintiff. These last two notes with interest amounted at the time of the trial to $322. Plaintiff also testified that defendant owed him $5 for drafting the written documents in 1908.

It appears from the testimony that the plaintiff was to charge interest on all moneys advanced at the rate of ten per cent. per annum, and that upon all merchandise furnished he should charge in the way of profit a commission upon the price paid by him to jobbers and wholesale dealers, the commission to be ten per cent. for the first year and twenty per cent. for the second year. The defendant made several payments from time to time, which aggregated $634.12.

The chancellor rendered a judgment in favor of the plaintiff for the total sum of $901.16, in which were included all of said notes, and decreed the same a lien upon the land by virtue of said mortgage and a foreclosure thereof.

It is urged by the defendant that, by virtue of the above agreement providing for a charge for interest and commissions, the indebtedness and mortgage were tainted with usury, and are therefore void.

To constitute usury, there must either be an agreement between the parties by which the borrower promises to pay, and

the lender knowingly receives, a higher rate of interest than the statute allows for the loan or forbearance of money; or such greater rate of interest must be knowingly and intentionally "reserved, taken or secured" for such loan or forbearance. It is essential, in order to establish the plea of usury, that there was a loan or forbearance of money, and that for such forbearance there was an intent or agreement to take unlawful interest, and that such unlawful interest was actually taken or reserved.

The wrongful act of usury will never be imputed to the parties, and it will not be inferred when the opposite conclusion can be reasonably and fairly reached. *Scruggs* v. *Scottish Mortgage Co.,* 54 Ark. 566; *Garvin* v. *Linton,* 62 Ark. 370; *Leonhard* v. *Flood,* 68 Ark. 162; *First National Bank* v. *Waddell,* 74 Ark. 241; *Citizens' Bank* v. *Murphy,* 83 Ark. 31; *Eldred* v. *Hart,* 87 Ark. 534.

In this case there is no evidence that there was any agreement to charge for the loan of the money a greater rate of interest than ten per cent. per annum; and the commission that was charged on the goods was for the purpose of securing a profit on the goods, and not an usurious rate of interest on money loaned. The plaintiff purchased the goods from jobbers and wholesale dealers, and he sold them to the defendant at a profit of from ten to twenty per cent. on the cost price to him. Such a transaction, if made in good faith for the purpose of securing a profit on the goods sold, and not for the purpose of evading the usury law, is not itself usurious and invalid. *Brakefield* v. *Halpern,* 55 Ark. 265.

In addition to this, the charges do not exceed the rate of ten per cent. per annum when the interest is calculated upon the moneys for the actual time that had run. The chancellor made a finding that the transaction was not usurious, and we are of opinion that his finding is well sustained by the evidence.

But the mortgage in this case was executed to secure the payment of $500, evidenced by three notes, which are described therein, and the mortgage does not provide for the security of any other indebtedness. A mortgage which expressly states that it was given as security for an indebtedness which is specifically named in amount and kind cannot be made to cover other obligations and liabilities. It cannot be made to cover

other debts or a larger amount of indebtedness than that which is expressly stated therein. It cannot be enlarged by parol agreement made at the time of its execution, and a parol agreement made subsequently to enlarge the indebtedness which it is to secure will be inoperative. *Whiting* v. *Beebe,* 12 Ark. 482; *Johnson* v. *Anderson,* 30 Ark. 745; *Martin* v. *Halbrooks,* 55 Ark. 569; *Moore* v. *Terry,* 66 Ark. 393; *Hughes* v. *Johnson,* 38 Ark. 285.

When a mortgage is executed for the express purpose of securing a particular indebtedness therein named, the holder of the mortgage cannot "tack" to that indebtedness any other debt or demand he has against the mortgagor, so as to stretch the security of the mortgage to cover that also. It therefore follows that the mortgage herein did not cover the two notes executed by the defendant to T. W. Steele on January 1, 1900, nor the charge of $5 for the drafting of the deed and instruments in 1908.

The defendant in his answer also pleaded payment, but generally, and without stating in what manner payments were made or the amounts thereof. He introduced no testimony whatever. In their reply brief, counsel for appellant for the first time refer to this issue, and attempt to sustain it upon the testimony of the plaintiff. But in his testimony the plaintiff denied that the indebtedness was paid. The burden of proof to show and establish payment was on the defendant. This has not been done.

The total amount of all the debt, including interest, as represented by all the notes and account to the date of the decree below, was $1,519.65. The payments of $634.12, applied to the debts not represented by notes, reduce that total to $885.53. In this balance are included the two notes executed in 1900 and the charge of $5 for the drafting of papers in 1908, and these with the interest calculated thereon amounted to $327; and this, being deducted from the last above sum, leaves $558.53, which is the amount due upon the notes described in and covered by the mortgage, with interest to the date of the decree. To that extent only should a lien be declared upon the land by virtue of the mortgage. For the said sum of $327 the plaintiff should have a personal judgment only against the defendant.

The decree is reversed, and the cause is remanded with instructions to enter a decree in accordance with this opinion.

### On Rehearing.

#### Opinion delivered October 11, 1909.

Frauenthal, J. The appellant has filed a motion for a rehearing of this cause, and bases his motion upon the ground that his answer sufficiently sets forth a plea of payment, and that the testimony of the plaintiff sufficiently establishes a payment of all that portion of the indebtedness which is secured by the mortgage.

Upon further examination we are of the opinion that the plea of payment is sufficiently made. If the plea was too indefinite or uncertain, it was the duty of appellee to request a more definite and detailed allegation, if he desired it. And we are also of the opinion that the testimony of the plaintiff and the account which he has introduced present sufficient evidence to determine the issue made on the plea of payment.

From this testimony it appears that when the defendant on January 2, 1905, executed the three notes, aggregating $500, and the mortgage to secure that amount of indebtedness, he had then only received $30.69 of merchandise, and was actually indebted to plaintiff in no larger amount. These notes were really executed to cover that debt and also merchandise and moneys which the plaintiff had agreed to furnish to the defendant in the future.

According to the agreement of the parties, the sole consideration of these notes and of this mortgage was the merchandise which had been and would thereafter be furnished to the defendant. In accordance with that understanding, the plaintiff did furnish to the defendant during the year of 1905 merchandise and moneys to the amount of $500; and then, without further understanding as to security, continued to furnish additional items of merchandise on the account. All the items thus furnished were kept by plaintiff upon a running account upon his books. The first item of that account is the item of $30.69 above referred to; and in the regular order of their dates all the other items furnished to the defendant upon these notes and mortgage are charged upon this account. And thus the plaintiff continued to furnish to the defendant merchandise and moneys during the years of 1905, 1906 and 1907, all of which were entered upon this running account and aggregated $1,187.65. So that

the first items of the account to the amount of $500 were the consideration of and represented the above three notes, and constituted the indebtedness that was actually secured by the mortgage; and these items, being thus charged upon the running account, were in truth and effect the three notes; and the legal result of thus charging these items, which represented these notes, upon the account was in effect to charge the notes themselves upon the account as of the date when the items so furnished and charged would equal the amount of the notes. And the account was one continuous running acconut. At the time the payments were made no direction was made by the defendant as to the application thereof; and there was no agreement as to any special application of any of the payments. The plaintiff did not apply any of the payments to any special indebtedness. But the payments were entered generally as credits upon the running account. All the payments aggregated $634.12, and the items and dates thereof were as follows:

October 28, 1905, By cotton, 2,325 lb. at 10 1-2..$244.12
January 29, 1906, By cash ................... 25.00
February 10, 1907, By deposit Ger. Nat. Bank.. 225.00
February 28, 1907, By cash ................ 40.00
July 1, 1907, By cash ..................... 100.00

At the date of the first above payment all the items charged on the account amounted to $574.35. Of these items $500 were represented by the said three notes aggregating the same amount. At the date of the last payment the total of the items charged on the account amounted largely in excess of $1,000.

The rule relating to the application of payments is that the debtor at the time of making payment to his creditor has the primary and paramount right to direct the application thereof to such debt or demand as he may choose, whether same is secured or unsecured. If the debtor does not at the time of making the payment direct its application, then the creditor has the right to make the application. But in event such application is made by neither, and the payment is entered generally as a credit on a running account as of the date of payment, then the law makes the application, and applies the payment in liquidation of the oldest item of the account. *Cross* v. *Johnson,* 30 Ark. 396; *Johnson* v. *Anderson,* 30 Ark. 755; *Price* v. *Dowdy,* 34

Ark. 285; *Hughes* v. *Johnson,* 38 Ark. 294; *Kline* v. *Ragland,* 47 Ark. 111; *Lazarus* v. *Freidheim,* 51 Ark. 371; *Dunnington* v *Kirk,* 57 Ark. 598; *Fort* v. *Black,* 50 Ark. 256; *Goldsmith* v *Lewine,* 70 Ark. 516.

This rule is founded upon the reason that this manner of application of the payments more surely represents the intention of the parties. But under such circumstances, before there can be an application of a payment to one of the debts or to any item of debt, should there be several, such debt should be due and payable; otherwise it would be presumed to be the intention of the parties to apply the payment to that debt only which is actually due and payable at the time of the payment. If the debt is not due at the date of such payment, then it is not in contemplation of law the oldest item of the account, although it is the oldest item of charge. In such case the determination of the oldest item of the account is not fixed by the date of the charge alone; but it must be first in the date of its charge and also payable at the date of the payment, before application of such payment shall be made to such debt. 30 Cyc. 1243; *Frazier* v. *Lanahan,* 71 Md. 131; *Wolford* v. *Andrews,* 29 Minn. 250; *McMillan* v. *Grayston,* 83 Mo. App. 425.

In this case the items of the account which represented and went to make up the notes matured when the notes matured; the maturity of the notes fixed the time when, according to the agreement of the parties, the items represented by and the consideration of the notes should be paid; and until then no action could have been brought for their recovery. Therefore these items in the account were in truth and effect payable as of the date of the maturity of each note of which it was the consideration.

On October 28, 1905, when the first payment was made of $244.12, the account amounted to $574.35; of this account $500 was represented by three notes, and was therefore not payable on the date of the said first payment. But the balance of the account, towit: $74.35, was then payable; and therefore the payment should be applied to that part of the account. When so done, it would leave a balance of $169.77 of the payment. The only debt that the defendant then owed to the plaintiff was these three notes; and, inasmuch as defendant then made a pay-

ment, it will be presumed that the parties intended that it should be applied on these notes, although none of them had then matured, because that was the only indebtedness then owed by defendant. Applying this balance to the payment of $169.77 on the first note leaves a balance thereof of $40.23, and this became payable January 1, 1906. On January 1, 1907, the second note for $200 matured, so that on this later date items on the account to the amount of $240.23, represented by the two notes, became payable, and were therefore the oldest items subject to payment on the account on that date.

The payments made thereafter should therefore be applied to these items representing the amount due on the two notes. The payments after January 1, 1907, amounted to $365, and were more than enough to pay these items of the account amounting to $240.23, which represented the balance due on the two notes; and when so applied the said two notes were fully paid. But at the date of the last item of payment—July 1, 1907—the last note for $100 had not matured, that note maturing January 1, 1908. At the time of this last payment there were other items of charge on the account greatly in excess of all the payments. Inasmuch as this last note matured subsequent to the last payment, it was not at the date of these payments in legal contemplation the oldest item on the account, and therefore these payments should be applied to those other and older items of the account which were actually payable; and, inasmuch as these other items exceed all payments, the note for $100 was not paid. This note bore interest from its date at the rate of 10 per cent. per annum. But the consideration thereof was not furnished until August 16, 1905. It should bear interest at the above rate only from that date.

It follows therefore that the two notes for $200 each have been paid; and that the third note for $100, with interest as above indicated, has not been paid. To that extent only should a lien be declared upon the land by virtue of said mortgage. For the balance of the indebtedness, towit, $785.53, the plaintiff should have a personal judgment only against the defendant.

The motion for the rehearing of this cause is granted, and the former judgment of this court is modified so as to conform to this opinion.

The decree of the Lonoke Chancery Court is reversed, and this cause is remanded with directions to enter a decree in accordance with this additional and modified opinion.