## J. T. DAVIDSON *v.* COMMERCIAL CREDIT EQUIPMENT Corp.

5-6243                                        499 S.W. 2d 68

Opinion delivered September 24, 1973

*Brown, Compton & Prewett, Ltd.,* for appellant.

No brief for appellee.

JOHN A. FOGLEMAN, Justice. J. T. Davidson, appellant here, sought to cancel a chattel mortgage securing the payment of a $20,000 purchase money balance on an airplane he bought from Texas Aviation Service.

As grounds for cancellation, he asserted the contract was usurious. Here he contends the chancery court erred in denying the relief he sought.

There is no dispute about the basic facts. The $20,-000 balance was to be paid in 60 monthly installments. In computing the finance charge, or time price differential, a chart prepared by Financial Publishing Company of Boston, Massachusetts, was used. It provided for an "add on" rate of $5.50 for a 60-month term at an annual actuarial interest rate of 10%, the maximum allowable in Arkansas. The parties stipulated that the application of this factor would result in a finance charge of $5,500 and equal monthly payments of $425 each.

The chancellor specifically found that: The Financial Publishing Company was a reputable financial publishing company; the rate chart was utilized without error or miscalculation; accepting testimony on behalf of appellant at face value, the maximum overcharge would amount to five cents per month or $3.00 over the five year term; no evidence based upon an independent calculation of the correct interest charge had been made by any witness; the only witness who testified relied solely upon two financial publications, one of which was printed by Financial Publishing Company; appellant had failed to meet his burden of proving the contract usurious; any error made in calculating the interest resulted from a reliance, in good faith, upon a financial table published by a reputable financial publishing company, rather than from an intention to extract a usurious interest charge. Since we are unable to say the chancellor's findings are clearly against the preponderance of the evidence, we affirm.

Only one witness testified. He was Marion R. Smith, Executive Vice President of the National Bank of Commerce of El Dorado. He stated his familiarity with various documents used for computing interest. He expressed the opinion that the monthly payments should have been $424.95 per month. He used a book prepared by Area Computer Services, Inc., and, by applying the appropriate factor for a 10% interest rate over a five-year

term to the principal balance, arrived at a figure of $424.942 which he rounded off at $424.95. He stated that, if he were attempting to make the computation in the bank's operations, he would use an equal monthly loan amortization table contained in a book published by Financial Publishing Company of Boston, and readily available to all banking institutions and lending agencies. By using that book he also arrived at a monthly payment of $424.95. He stated he was not familiar with the book containing the table or chart used in this case. Upon examination, the only differences he could find between the chart used by appellee and the books he relied upon were the necessity for mathematical calculation to determine the amount of the monthly payment when it was used and the fact that it did not carry seven digits to the right of the decimal point, as did the book to which he first referred.

We agree with appellant that one cannot purge a usurious contract by a retroactive correction or a subsequent disclaimer. We also agree that the validity of a contract attacked for usury does not turn upon the question of whether the alleged usurer has a specific intent to violate the usury laws. The intent required is an intent to receive or reserve a rate of interest that proves to be usurious. Still, we have long recognized that an honest error of calculation will not render a contract usurious. In *Garvin* v. *Linton,* 62 Ark. 370, 35 S.W. 430, we said:

> There must be an intent to take unlawful interest, to constitute usury. There can be no usury when the amount taken in the contract for interest in excess of 10 per cent per annum was reserved through a mistake or ignorance of the fact that it was in such excess. If the lender, by mistake of fact, by error in calculation, or by inadvertence in the insertion of a date, contracts to receive an illegal rate of interest, "such mistake, error, or inadvertence will not stamp the taint of usury on such engagement, nor cause to be visited upon him, who did not knowingly and intentionally disregard the law in this behalf, the highly penal consequences of an usurious offense."

Moody v. Hawkins, 25 Ark. 191; Bank of De Shon, 41 Ark. 331.

The act of usury will not be presumed, or imputed to the parties, and will not be inferred if the opposite conclusion can be fairly and reasonably reached. *Commercial Credit Plan* v. *Chandler*, 218 Ark. 966, 239 S.W. 2d 1009; *Cammack* v. *Runyan Creamery*, 175 Ark. 601, 299 S.W. 1023; *Briggs* v. *Steele*, 91 Ark. 458, 121 S.W. 754. In *Cox* v. *Darragh Company*, 227 Ark. 399, 299 S.W. 2d 193, we held that a mistake in charging an illegal rate of interest would not stamp a transaction with the taint of usury, relying upon the quotation from *Garvin* v. *Linton,* supra; *Hinton* v. *Brown,* 174 Ark. 1025, 298 S.W. 198; and *Temple* v. *Hamilton,* 178 Ark. 355, 11 S. W. 2d 465. We affirmed the judgment of the trial judge, sitting as a jury, holding that evidence that payments were scheduled upon an erroneous calculation made and furnished by a banker, at the request of the creditor, constituted substantial evidence to sustain the holding that usury had not been shown. Later, we reversed a holding by a chancery court that a contract was usurious, on the ground the evidence showed that the excessive finance charge resulted from an honest mistake. *Sammons-Pennington Company* v. *Norton,* 241 Ark. 341, 408 S.W. 2d 487. There the president of the creditor corporation had testified that he called upon his finance company to furnish the amount of interest at the maximum legal rate to be added to the debt. The company used "Lake's Monthly Installment and Interest Tables" to supply the figure, which was stipulated, at the trial, to be excessive by $57 to $60. We said:

> It appears that, in determining whether a usurious charge has been made, all attendant circumstances must be taken into consideration. When this is done, we think it is plain that the overcharge in the instant litigation was the result of an error, made in good faith, rather than being based on an intent to violate the usury law.

One of the most important considerations in reaching our result was that the creditor had endeavored to follow our admonition in *Holland* v. *Doan,* 228 Ark. 340, 307

S.W. 2d 538, that one who does not know how to figure interest should have his calculations checked by one who is familiar with figuring interest. We also pointed out that an accountant who testified the interest exceeded the legal limit reached his conclusion after computations extending over the better part of a day and that, even in stipulating the excess, no definite figure was used. Even though we did not premise our result upon the fact, we observed that it seemed ridiculous to surmise that anyone would risk the cancellation of a principal debt of $16,000 in order to receive $57 to $60 in excess interest.

This case clearly falls within the pattern of *Cox* and *Sammons-Pennington,* rather than of *Holland* v. *Doan,* supra, relied upon by appellant. In *Holland,* the interest charged was 11.95%. No offer to remit the excess was made in that case until after all the evidence in the case had been presented on both sides, and we found no evidence of a mathematical miscalculation. The creditor had used a chart furnished by GMAC and apparently charged interest on the basis of one year, or 52 weeks, when the payments were to be made over only 48 weeks. We said the excessive amount was arrived at because the wrong formula was used in spite of the fact that the creditor must surely have known that a year consisted of 52, not 48 weeks. Here appellee, in its first pleading, offered to refund any overcharge. It used a chart furnished by the same publishing company that distributed a book that would have ordinarily been used by the National Bank of Commerce in El Dorado.

Slight variations in results may be reached by use of other methods. Use of a multiple of a factor from "Lake's Monthly Installment and Interest Tables" (Sixth Edition) for $1,000 principal at 10% over 60 months would produce a payment of $424.92. This would indicate an excess of $4.80. The real test for usury, i.e., a comparison of the amount the borrower is required to pay with the total amount he could be required to pay at the maximum rate of interest for the term, is made by using the statutory system of applying payments first to interest and the excess to principal. *McDougall* v. *Hachmeister,* 184 Ark. 28, 41 S.W. 2d 1088, 76 A.L.R. 1463;

*Widmer* v. *J. I. Case Credit Corp.*, 243 Ark. 149, 419 S.W. 2d 617; *Lyttle* v. *Mathews Investment Company*, 193 Ark. 849, 103 S.W. 2d 47; *Hare* v. *General Contract Purchase Corp.*, 220 Ark 601, 249 S.W. 2d 973; *Commercial Credit Plan, Inc.* v. *Chandler*, 218 Ark. 966, 239 S.W. 2d 1009; Ark. Stat. Ann. § 68-606 (Repl. 1957). If that test is used applying monthly payments of $425, the last payment would be slightly over $4.00 more than the legal limit. By use of the means hereinabove mentioned, range of the excess is from $3.00 to $4.80. If it were ridiculous to think one would deliberately risk cancellation of a $16,000 debt to extract an extra $57, it would be ludicrous to think one would risk $20,000 in an effort to collect $3.00 or $4.00 more.

Under all circumstances presented here, we affirm the chancellor's decree, because we cannot say the conclusions he reached from the facts was not supported by a preponderance of the evidence.