BLALOCK *v.* BLALOCK.

5-888 288 S. W. 2d 327

Opinion delivered March 19, 1956.

[Rehearing denied April 16, 1956.]

*McCourtney, Brinton, Gibbons & Segars,* for appellant.

*Penix & Penix,* for appellee.

ED. F. McFADDIN, Associate Justice. Appellee, J. A. Blalock, filed this suit against the appellant, R. L. Blalock, seeking to recover judgment for the balance due on a note of $3,000, dated November 2, 1950. Trial in the Chancery Court resulted in a decree for the plaintiff for $1,363.62, with interest at 5% from the date of the note. R. L. Blalock has appealed and presents here the issues now to be discussed.

I. *Usury.* The original note, that the appellant signed, read:

"$3,000.00 Jonesboro, Arkansas, November 2, 1950. At $150.00 per month beginning Dec. 1, 1950, consecutively after date for value received, I, we, or either of us promise to pay to the order of J. A. Blalock Three Thousand and no/100 Dollars at Jonesboro, Ark. with interest at 5 per cent per annum from date until paid. If the interest be not paid when due, to become as principal and the sum thereof to bear interest at the rate of .........per cent per annum. The makers and endorsers of this note hereby severally waive presentment for payment, notice of non-payment, protest, and consent that time of payment may be extended without notice thereof.

"(Signed) R. L. Blalock."

As security for the note, appellant executed a chattel mortgage on a truck and trailer and, in the chattel mortgage, the indebtedness was described as follows:

"Whereas, the said party of the first part is indebted to the party of the second part in the sum of Three Thousand Dollars as is evidenced by a promissory note of even date herewith, due and payable in 24 equal monthly installments of $150.00 per month beginning December 1, 1950, and consecutively and continuously thereafter for 23 months on 1st day of each month *at 6% per annum.*"[1]

---

[1] These words are emphasized because they are discussed in Topic II, *infra.*

If the description in the mortgage controls as to the indebtedness, rather than the provisions of the note, then the transaction is usurious; because twenty-four monthly payments of $150.00 per month in two years time is more than a repayment of a debt of $3,000.00 with 10% interest thereon.[2] It is on the theory that the description of the debt *in the mortgage* controls rather than the note itself, that the appellant presents this point of usury. But the law is clear that the note sued on controls over the recitals of the indebtedness as contained in the mortgage. In *Sugg* v. *Utley,* 186 Ark. 560, 54 S. W. 2d 413, there was a conflict between the recitals in the note and those in the mortgage, and we said:

"The provisions of the note would control as against the recital in the mortgage, which is only a security and incident to the debt. 1 Jones on Mortgages (7th ed.), page 484; *Farnsworth* v. *Hoover,* 66 Ark. 367, 50 S. W. 865."

In the case of *Indiana etc. Ry. Co.* v. *Sprague,* 103 U. S. 756, 26 Law Edition 554, the Supreme Court of the United States had before it a case in which the bond (i. e., note) contained one provision and the mortgage another; and the Supreme Court of the United States said:

"The bond being the principal thing containing the obligation of the Company, and the mortgage a mere security to ensure the performance of that obligation, the terms of the bond should control."

In 10 C. J. S. 485, cases from many jurisdictions are cited to sustain the general rule:

"Where the note and the mortgage contain conflicting and irreconcilable provisions as to the character or terms of the debt, or the time for its payment, the note will govern as being the principal obligation."

---

[2] For some of our more recent cases on usury, see: *Strickler* v. *State Auto Finance Co.,* 220 Ark. 565, 249 S. W. 2d 307; *Winston* v. *Personal Finance Co.,* 220 Ark. 580, 249 S. W. 2d 315; and *Hare* v. *General Contract Purchase Corp.,* 220 Ark. 601, 249 S. W. 2d 973. The note here involved was executed prior to these cases.

In the case at bar, the note recites that the indebtedness is $3,000.00 with interest at 5% from date and that the payments are to be $150.00 per month and the number of monthly payments is not stated. Therefore, the description of the indebtedness in the mortgage must yield to the actual note itself; and the note and evidence do not show a usurious contract. Both the appellant and the appellee admitted that neither of them read the mortgage when it was executed. They were both in the attorney's office when the papers were prepared and thought that the note would be correctly described in the mortgage. The attorney who prepared the note and mortgage frankly admitted that he made a mistake in his mental arithmetic in calculating the number of monthly payments. The frank admission of the attorney substantiates the parties. Usury consists in contracting for payment of interest greater than the law allows. Usury is not to be inferred when neither the borrower promised to pay a greater rate of interest than the law permits, nor the lender knowingly entered into a usurious contract. *Commercial Credit Plan* v. *Chandler*, 218 Ark. 966, 239 S. W. 2d 1009. All the evidence shows that the instant transaction was not usurious; so the appellant's plea of usury must fail.

II. *Alteration Of The Instrument.* In this assignment the appellant refers to an addition that the attorney made in the description of the indebtedness in the chattel mortgage after the appellant and appellee had left his office and before the mortgage was filed in the courthouse. We have already copied the indebtedness clause as it was contained in the mortgage, so we will not recopy it; but we point out that the words at the close of the indebtedness clause — "at 6% per annum" — were added by the attorney in pen and ink after the parties had left his office. All of the other description of the indebtedness was either printed or typewritten. The attorney who made the addition frankly says that it was done to try to straighten out the attorney's mistake in mental arithmetic. If we had before us some question about the foreclosure of the mortgage, then the question of whether the alteration was material might

be a vital issue. But, in this case, the uncontradicted proof shows the mortgagor (appellant) disposed of the mortgaged property and paid the mortgagee (appellee) some of the proceeds of the sale; and the Chancery decree, herein involved, has no provision regarding foreclosure of the mortgage. Therefore, any question about an alteration in the mortgage passes out of this case because the mortgage is not being foreclosed. The note is the sole basis of the decree here involved.

III. *"Clean Hands" Doctrine.*[3] The appellant says that a court of equity should not award a judgment to the appellee because the appellant was executing the mortgage to the appellee to hinder and delay other creditors of the appellant in the collection of their indebtedness. But this, like the question of the alteration of the mortgage, seems to us immaterial. A great amount of testimony was taken, showing both previous and subsequent transactions between the parties, to establish that the indebtedness of $3,000.00 was actually due and owing at the date of the note, and that certain payments had been made thereafter. The indebtedness and the payments and the amount of the balance due are not even questioned by the appellant on this appeal. Since there was a valid indebtedness, the appellee had a right to have it evidenced by a note, and there was nothing fraudulent in that act. The appellant[4] frankly conceded that he executed the mortgage to the appellee in order to prefer him over his other creditors, but the truck and trailer have been disposed of, so the matter of "clean hands" as regards the mortgage has likewise passed out of the case.

Affirmed.

---

[3] On page 3 of his brief, the appellant says: "For the purpose of this appeal there are but two issues: Usury and alteration of the instrument"; but, in the argument, appellant also discusses a third point, that is, the "clean hands" doctrine.

[4] On this question of "clean hands," it is interesting to note that the Chancellor observed that the appellant's claim, that he was trying to defraud his creditors, did not prejudice the appellee, but could be considered in deciding the credibility to be given the appellant's testimony.