BROOKS *v.* BURGESS.

5-1328                                    306 S. W. 2d 104

Opinion delivered October 28, 1957.

*Wiley A. Branton,* for appellant.

*Robert Meurer* and *Spitzberg, Bonner, Mitchell & Hays,* for appellee.

GEORGE ROSE SMITH, J. This is a suit brought by E. E. Burgess to foreclose two mortgages upon land owned by the appellant. The principal defense is a plea of usury. The chancellor rejected this plea, fixed the amount of the indebtedness at $13,050.30, and entered a decree of foreclosure. Burgess died during the pendency of the appeal, and the cause has been revived in the name of his executor.

The debt sued upon represents money and supplies advanced by Burgess over a period of years for the cultivation of land being farmed by the appellant and her husband. The account goes back to the fall of 1946 and was at first secured by the yearly execution of a chattel mortgage on the crop. In March of 1951 the debt exceeded the estimated value of the crop for that year, and the debtors executed the first of the two real estate

mortgages in issue. It secures a note for $4,000, with interest at 10 per cent per annum. On January 1, 1953, the Brookses executed the other mortgage sued upon, to secure a note for $6,588.47. This note recites an interest rate of 10 per cent, though it is described in the mortgage as bearing only 8 per cent before maturity and 10 per cent thereafter. It does not appear that either note was meant to represent the exact amount then owed. The lender's son, Marvin Burgess, testified that the $4,000 mortgage was given "to cover a part of what they owed at that time." It is not clear whether the second mortgage was a renewal of the first, nor is it shown how the principal amount of $6,588.47 was determined.

Each note recites the maximum legal rate of interest and is not ostensibly usurious. Before the suit was filed, however, the appellant requested and was given a statement of the account. This statement covers the years 1946 through 1954, contains some 640 items of debit and credit, and must have been prepared from the lender's records. It discloses that the lender invariably calculated the interest on September 1 of each year and simply entered an interest charge amounting to 10 per cent of the sum then owed, regardless of when the advances had been made. In the first year, for example, a total of $3,389.99 was advanced from time to time between October 25, 1946, and September 1, 1947. On the latter date an interest charge of exactly 10 per cent, amounting to $338.99, was entered. Needless to say, this method of computing interest is usurious.

In view of the lender's itemized statement the appellant's attorney raised the question of usury before the suit was filed. Burgess then offered to delete the illegal charges and later brought suit for the amount of the principal only, though the complaint was subsequently amended to ask for interest in accordance with the terms of the mortgages. At the trial Marvin Burgess testified that he kept his father's books and followed "a practice of ours for years" in making the 10 per cent interest charge every September. This is from his testimony:

"A. I charged interest the first of each September.

"Q. How much interest did you charge?

"A. Ten per cent.

"Q. Suppose a man obtained $100.00 on the first of August, how much interest would you charge on that item the first of September?

"A. Ten per cent.

"Q. Even though he had it only one month?

"A. That is right. I charged 10 per cent on the dollar the first of September, regardless of when he got it."

In attempting to excuse his practice the witness stated that he had no training in accounting, that he was under the impression that he was charging the interest rate prescribed by the mortgages, and that he offered to correct the account when he learned that his charges were unlawful. It is now argued that the lender merely made a mistake of fact in the calculation of interest. Since suit was not actually brought on the usurious account it is contended that the mortgages should be enforced according to their terms.

We do not find this reasoning impressive. It is immaterial that the debtors did not participate in the unlawful computations. "It is not necessary for both parties to intend that an unlawful rate of interest shall be charged, but if the lender alone charges or receives more than is lawful, the contract is void." *Wilson* v. *Whitworth*, 197 Ark. 675, 125 S. W. 2d 112. Here the lender made excessive interest charges for more than eight years — from the inception of the account in 1946 to the submission of the itemized demand in 1955. It is plain enough that the notes, despite their failure to state the exact sum owed, were based upon a calculation embodying usurious interest. It is impossible to ascertain the sum due by merely examining the notes and mortgages; the lender's records must be consulted before the correct balance can be determined. That the suit was brought

only for interest at the legal rate amounts in substance to no more than an effort to remit the excess, which cannot validate the contract. *Habach* v. *Johnson,* 132 Ark. 374, 201 S. W. 286.

Nor is this a situation that permits a finding of excusable mistake. We have often recognized that a lender who attempts to compute his charges according to law is not to be penalized for an inadvertent mathematical error or for a true mistake of fact, such as the inclusion of an incorrect charge for insurance. *Garvin* v. *Linton,* 62 Ark. 370, 35 S. W. 430, 37 S. W. 569; *Cox* v. *Darragh Co.,* 227 Ark. 399, 299 S. W. 2d 193; *Griffin* v. *Murdock Acceptance Corp.,* 227 Ark. 1018, 303 S. W. 2d 242. That is not the case before us. Here the lender made no effort to compute the interest at the legal rate, nor was there a mathematical error in his calculations. At the most Burgess made a mistake of law, that of thinking that his method of charging interest was lawful. If the usury laws are to mean anything at all it is plain enough that those who engage in the business of lending money must at their peril familiarize themselves with those laws. Otherwise there is nothing to prevent every lender from habitually collecting excessive interest charges, as long as he purges the account of usury when it becomes necessary to go into court.

Reversed and remanded for the entry of a decree canceling the notes and mortgages.

HARRIS, C. J., disqualified and not participating.