FORD MOTOR CREDIT CO. *v.* CATALANI.

5-3355                                            383 S. W. 2d 99

Opinion delivered October 26, 1964.

*Griffin Smith,* for appellant.

*William H. Drew,* for appellee.

JIM JOHNSON, Associate Justice. This is an action to cancel a conditional sales contract for usury.

On April 3, 1963, appellee Pete Catalani purchased a Ford automobile from appellant Hollis Motor Company at McGehee and executed a conditional sales contract to finance the unpaid balance of the purchase price. Appellant Ford Motor Credit Company, holder of the contract, has assumed all responsibility for the calculations of interest upon which this suit is based and has in fact released Hollis Motor Company from any liability. On May 2, 1963, appellee filed suit against appellants in Chicot Chancery Court, alleging that the conditional sales contract interest exceeds ten percent per annum and that the contract is therefore void, and prays cancellation. Appellants answered that the contract is not usurious because any excess interest was the result of erroneous mathematical calculation without intent to charge a usurious rate, and prays that the excess be remitted and the complaint dismissed. On September 12, 1963, the parties entered into a stipulation that provided (omitting details) : (1) appellee purchased a certain car, receiving credit for a trade-in, leaving a certain balance due; (2) the balance due was financed by appellant Ford Motor Credit Company; (3) itemized insurance and finance charges; (4) described the payment schedule; (5) detailed the items comprising the principal sum financed; (6) itemized the credit life insurance charge; and (7) stipulated finally that "the payment schedule on the contract sued on herein, when computed, produces an interest rate in excess of ten percent per annum." At trial on September 12, 1963, testimony of appellee and the manager of appellant Ford Motor Credit Com-

pany's office was taken. By decree of December 23, 1963, the court held that the contract was usurious, cancelled the contract and quieted title to the automobile in appellee.

On appeal appellant Ford Motor Credit Company contends that an isolated failure to properly compute the amount of interest on an installment contract is not usury, and that the only issue is "whether this admitted error was deliberate."

Appellee testified about purchasing the automobile, signing a conditional sales contract at Eudora, being contacted by Reed, manager of the Ford Motor Credit Company office in Jackson, Mississippi, who advised appellee that the first contract was in error and had appellee sign a second contract which reduced the number of monthly payments from 24 to 23 and increased the final balloon payment somewhat. Appellee testified that Reed told him that the legal interest rate in Arkansas is 10.5% and that he (appellee) did not learn that the maximum legal interest rate in Arkansas is 10% until he talked to his lawyer a few days later. Reed testified about finding an error in appellee's contract, and having appellee sign the second one, which was the one sued on. (It appears that the first contract was also usurious.) Reed denied telling appellee that the Arkansas lawful interest rate is 10.5%. Reed's testimony reveals that when Hollis Motor Company called him and asked him to figure the payments under the proposed contract, his secretary figured it according to Ford Motor Credit Company's formula. Reed also figured the payments, reached a different and higher result and arbitrarily assumed that his figures, rather than those of his secretary, where accurate and used them in preparing the contract. The secretary's work sheet was introduced in evidence along with Reed's, in an attempt to show Reed's mathematical error which occasioned the usury. It is demonstrated by the secretary's work sheet that the company's formula is accurate. Reed was unsuccessful in attempting to convince the trial court that his error was a simple mathematical error in calcu-

lation. From the detailed analysis of the figures involved in the chancellor's findings (24 pages), as well as Reed's lengthy testimony, it seems apparent that Reed's error was in using the wrong interest rate, one which may be permissible in Mississippi without forfeiture of the principal but not in Arkansas [Miss. Code Ann. § 36 (1942)]. This is not the type of error in mathematic calculations which the courts of Arkansas will forgive and forget by allowing the lender to repay the overage. To the contrary—this court has staunchly resisted all attempts to erode the constitutional interdiction of contracts bearing more than ten percent interest. In *Brooks* v. *Burgess,* 228 Ark. 150, 306 S. W. 2d 104, the usury was patent and when the debtor objected, foreclosure proceedings were brought for the amount of the principal only, and later amended to ask for interest in accordance with the terms of the mortgage. The holding in the *Brooks* case is particularly apt here:

"That the suit was brought only for interest at the legal rate amounts in substance to no more than an effort to remit the excess, which cannot validate the contract. *Habach* v. *Johnson,* 132 Ark. 374, 201 S. W. 286.

"Nor is this a situation that permits a finding of excusable mistake. We have often recognized that a lender who attempts to compute his charges according to law is not to be penalized for an inadvertent mathematical error or for a true mistake of fact, such as the inclusion of an incorrect charge for insurance. *Garvin* v. *Linton,* 62 Ark. 370, 35 S. W. 430, 37 S. W. 569; *Cox* v. *Darragh Co.,* 227 Ark. 399, 299 S. W. 2d 193; *Griffin* v. *Murdock Acceptance Corp.,* 227 Ark. 1018, 303 S. W. 2d 242. That is not the case before us. Here the lender made no effort to compute the interest at the legal rate, nor was there a mathematical error in his calculations. At the most Burgess made a mistake of law, that of thinking that his method of charging interest was lawful. If the usury laws are to mean anything at all it is plain enough that those who engage in the business of lending money must at their peril familiarize themselves with those laws. Otherwise there is nothing to prevent

every lender from habitually collecting excessive interest charges, as long as he purges the account of usury when it becomes necessary to go into court."

Affirmed.