CLYDE M. YOUNG *v.* FARMERS
BANK & TRUST CO. ET AL

5-5175                                    453 S. W. 2d 47

Opinion delivered April 27, 1970

*Mitchell Moore* and *Eugene Reeves,* for appellant.

*Reid, Burge, Prevallet & Brewer,* for appellees.

GEORGE ROSE SMITH, Justice. This case, now a three-party controversy, began as a simple action at law brought by one of the appellees, Farmers Bank & Trust Company of Blytheville, upon a $13,000 promissory note executed in 1963 by the sole defendant, the appellant Clyde M. Young, and co-signed by Clyde's brother Johnny as an accommodation maker. The bank, upon filing the suit, attached Clyde's interest in certain land. The validity of the attachment depends upon whether Clyde is still liable on the note, which is the main issue in this court.

Clyde defends the suit on the theory that the bank released him from liability on the original note by accepting in its place a substitute note for $13,000, plus $850 interest, executed solely by Clyde's brother Johnny. Before this action was filed Johnny Young went bankrupt. His trustee in bankruptcy, the appellee Frye, intervened in the case, asserting that Johnny paid Clyde's debt to the plaintiff bank and that Frye as trustee is therefore entitled to judgment against Clyde. Such a judgment would presumably become a prior lien against Clyde's land if the bank's attachment fails.

The circuit judge heard the case without jury. The

court sustained the Youngs' theory of the case, holding that Johnny's trustee is entitled to judgment against Clyde for the amount of the debt and that the bank no longer has any claim against Clyde. The court dismissed the bank's writ of attachment, but the court denied Clyde's claim for damages resulting from the assertedly wrongful attachment. Clyde appeals from the latter ruling, and the bank brings up the main issue by cross appeal.

We take up the cross appeal first. The bank contends that there is no substantial evidence to support the trial court's finding that the bank effectively discharged Clyde from liability to the bank by accepting Johnny as its sole debtor. In making that argument the bank insists that there was no consideration for its asserted release of Clyde's liability.

Upon the proof the trial court's judgment must be sustained. We need not go into nice distinctions about payment, accord and satisfaction, and novation. It is enough to say that as a matter of substantive law a creditor is at liberty to accept one debtor in place of another if the creditor chooses to do so. As Corbin puts it: "When two persons are jointly indebted to a third, the creditor may accept the note of one of them either as a mere collateral security or as a substituted contract and satisfaction. If the latter is found to be the fact, the co-obligor is at once discharged by novation. . . . If a promissory note is given and accepted as immediate discharge of a prior claim and in substitution for it, there is no revival of the original right even though the note is never paid." Corbin on Contracts, § 1293 (1962).

The basic question is one of intention. "There seems to be no doubt that an accord agreement may itself operate as a satisfaction of or substitute for the original obligation if it can clearly be shown that it was intended and accepted as such." Davis, "The Executory Accord: Effect of New Agreement on Original Obligation," 12 Ark. L. Rev. 160, 165 (1958). That

was the effect of our holding in *Mama v. Rout,* 144 Ark. 641 (mem.), 215 S. W. 610 (1919). See also Restatement, Contracts, §§ 418, 419, and 42ʍ (1932).

There is ample proof to show that the bank accepted Johnny Young as its sole debtor. This suit was brought upon a $13,000 note dated June 27, 1963, signed by Clyde and Johnny. On July 29, 1964, the bank, having reason to regard Johnny as the sounder financial risk, accepted Johnny's note for $13,850 as evidence of the debt plus interest. On the following day the bank entered that $13,850 payment as a credit to Clyde's ledger account, reducing that account to exactly zero. Clyde is not shown to have been carried ever again on the bank's ledgers as a debtor of the bank.

The bank put the original $13,000 note in a file along with Johnny's $13,850 note and now insists that the former stood as collateral for the latter. Even so, the bank's action in allowing Johnny to pledge the older note as collateral indicates the bank's recognition of Johnny as the owner of the older instrument. Moreover, when Clyde later sold some equipment in 1966 and sent the bank a cashier's check for $3,000, payable jointly to the bank and to Johnny, the bank credited the payment to Johnny's account only and made no notation of a part payment upon the old $13,000 note.

We cannot accept the bank's insistence that Johnny's series of renewal notes were mere paper transactions, having no substantive effect. When the bank accepted Johnny's note for $13,850, it reported the $850 in interest as income on its federal tax return. When that note was in turn superseded by the acceptance of a check for $14,378.60, the bank again reported the difference of $528.60 as taxable income. Finally, the entire accumulated debt was included by the bank in 1965 in a consolidated note executed by Johnny for $190,000, to secure which Johnny gave a real estate mortgage in which his wife joined. In a case of this kind the presence of a valuable consideration is a

factor tending to show that the transactions had substantive effect rather than being mere exchanges of pieces of paper. Our narration of the events is sufficient to show an abundance of substantial evidence to support the trial judge's finding that the bank released Clyde from liability. On cross appeal the judgment is affirmed.

By direct appeal Clyde questions the trial court's denial of his claim for damages for wrongful attachment. He does not, however, ask for compensatory damages. Instead, he seeks to recover his travel expenses in attending the trial and, primarily, an attorney's fee. Counsel candidly concede that our prior decisions disallow such costs of litigation in suits involving a wrongful attachment. *Romer* v. *Leyner*, 224 Ark. 884, 277 S. W. 2d 66 (1955); *Ark. Nat. Bank* v. *Stuckey*, 121 Ark. 302, 181 S. W. 913 (1915); *Patton* v. *Garrett*, 37 Ark. 605 (1881). We are asked to overrule those decisions.

There is much to be said in favor of the allowance of attorneys' fees incurred in the defense of attachments that prove to have been wrongful. The states are divided about thirty to four in favor of the allowance. See annotations, 25 A. L. R. 579 (1923) and 65 A. L. R. 2d 1426 (1959), where the cases are cited. We are not averse to re-examining the question should it be raised in a case involving an attachment issued after this opinion becomes final.

This, however, is not an appropriate occasion for such a re-examination of the law. From the outset of this litigation it has been clear that Clyde is liable either to the bank or to the trustee in bankruptcy. As a nonresident of this state Clyde has been subject from the beginning to having his property attached by one claimant or the other. Hence Clyde was destined all along to suffer the loss of his property to one of the claimants, so that the employment of an attorney was never likely to bring the case to a successful conclusion from Clyde's point of view. Consequently we do not

regard this case as one calling for a reconsideration of our prior decisions upon the point at issue.

We should add that we have not considered certain matter in the appellant's reply brief, to which the bank has objected by a motion to strike. The inclusion of the objectionable matter was contrary to our rules, not only because it is not in the record but also because, even if it were, a deficiency in the appellant's abstract cannot be corrected in his reply brief. *Reeves* v. *Miles*, 236 Ark. 261, 365 S. W. 2d 460 (1963).

Affirmed.