RUSSELL FIELDS v. CHRIS SUGAR AND GENE SUGAR

5-5774                                          476 S.W. 2d 814

Opinion delivered February 21, 1972
[Rehearing denied March 27, 1972.]

*Jeff Duty,* for appellant.

*Crouch, Blair, Cypert & Waters,* for appellees.

FRANK HOLT, Justice. The appellees brought this action against the appellant for breach of warranty of title to cattle. The court, sitting as a jury, found that the appellant had sold the livestock to the appellees with warranty of title and delivered them free of any encumbrances; that appellant had breached his warranty of title inasmuch as, following the sale, it became necessary for the appellees to pay a local bank for its lien against the cattle to secure an indebtedness of $3,031 which was unknown to the appellees at the time of the sale. Based upon these findings the court rendered judgment for $3,347.40 which included the lien, interest, and certain expenses incurred by the appellees in defending their claim against the security interest of the lienor bank. For reversal of this judgment the appellant asserts that the evidence is insubstantial and contrary to the law "in that the appellant was not the seller of the cattle." We cannot agree with this contention.

It is the province of the jury or the trial court, sitting as a jury, to determine the preponderance of the evidence. However, on appeal we apply the substantial evidence rule in testing the sufficiency of the evidence to support a finding and verdict and, in doing so, we review the evidence and all reasonable inferences deducible therefrom in the light most favorable to the appellee in support of the verdict. *Fanning* v. *Hembree Oil Co.,* 245 Ark. 825, 434 S. W. 2d 822 (1968). Nor do we disturb a finding of fact merely because the testimony is in conflict. On appeal it must appear to us that "there is no reasonable probability that the incident occurred as found by the [jury] trial court sitting as a jury." *Fanning* v. *Hembree Oil Co., supra.* See, also, *Lumbermens Mut. Ins. Co.* v. *Cooper,* 245 Ark. 81, 431 S. W. 2d 256 (1968).

The appellees adduced evidence that they received a handbill, an exhibit to their testimony, advertising that

on a certain date a public auction would be conducted at appellant's farm. This advertised sale reflected that the appellant was the owner of livestock (cattle and hogs). The appellees appeared at the sale and were advised that the public sale was not being held inasmuch as there was insufficient attendance. The appellees expressed an interest in purchasing the cattle. The appellant advised appellees that he would first have to release the auctioneer. Following this, appellant offered to sell the cattle for $115 per head and appellees countered with an offer of $100 per head for 31 heifers. When they could not agree, appellant said that he would have to consult with his son who "was in on it." Appellant then talked to his son who was on the premises and then advised appellees that $110 was the least price they could accept. Appellees refused and as they were leaving, appellant's son stopped them and accepted their $100 per head offer. The appellees transported the cattle in three loads with appellant, his son, the auctioneer, and others assisting in the loading. During the loading appellees gave to appellant their $3,100 check in payment of the cattle. Appellant first asked that the check be made payable to him and when he was asked how to spell his name, he suggested they leave the name blank and they did. One of appellant's witnesses testified that he was present and the auctioneer didn't want appellees to know he owned the cattle since appellant was the advertised owner.

Appellant's version of the transaction is that the cattle were owned by the auctioneer to whom he immediately delivered the check. The check was endorsed and cashed by the auctioneer and appellant received none of the proceeds. Appellant had known the auctioneer for many years. Appellant never told the appellees that he owned the cattle. He denied that he ever told the appellees that he and his son had any interest in the livestock and asserted that the sale was actually made by the auctioneer-owner and not by him. It appears that at the time of the trial the auctioneer was unavailable as a witness. Appellant agreed that he had priced the cattle to the appellees, at the auctioneer's insistence; also, that the auction sale advertised that he was the owner. Appellant's son and another witness testified that the ap-

pellees and the auctioneer, as the owner, agreed upon the sale price.

As previously indicated, any conflicting versions as to the evidentiary facts were matters for the factfinder to reconcile. The evidence is undisputed that the livestock also advertised appellant as the owner and that the sale would be held on his farm; that appellees attended the sale as a result of the advertisement; that appellant participated in negotiating a sale price with the appellees and never advised them he was not the owner as advertised; that he assisted in loading the cattle and then accepted from the appellees their blank check in payment of the livestock. Upon our review of the evidence, it must be said there is substantial evidence to support the finding that there was a warranty of a good and unencumbered title by the appellant, as the seller, which was breached to the detriment of the appellees. See Ark. Stat. Ann. § 85-2312 (Add. 1961).

Affirmed.