**In re James Laurel ROMINE, Bankrupt.**

**Harrell SIMPSON, Jr., trustee, Plaintiff,**

**v.**

**PHILCO FINANCE CORPORATION, INC., and the Insurance Company of North America, Surety, Defendants.**

**No. B–73–B–11.**

United States District Court, E. D. Arkansas, N. D.

April 22, 1976.

H. David Blair, Batesville, Ark., for bankrupt.

James L. Sloan, Little Rock, Ark., for trustee.

Melvin D. Benitz, St. Charles, Mo., Chester Lowe, Little Rock, Ark., for defendants.

**20**

MEMORANDUM OPINION AND ORDER

SHELL, District Judge.

This is a proceeding for review of an Order entered by the Bankruptcy Judge on December 3, 1974 disallowing a claim presented by the Reclamation Petition of appellant Philco Finance Corporation.

The question presented here for review is whether the contract by which Philco "floor-planned" merchandise to the bankrupt was void because of usurious rates of interest chargeable on the inventory.

The challenged transactions arise out of Philco's Inventory Financing and Security Agreement whereby Philco would supply inventory to a dealer, though a distributor, which merchandise was to be paid for by the dealer according to carefully structured schedules. These schedules all contained what Philco designated as "free periods", which permitted the dealer to defer payment for specified periods—90, 120, 150, or 180 days, as the case may be—without any interest accruing on the principal indebtedness.

At the expiration of the "free period", the dealer could either pay the entire balance or continue to defer payment, but at this point interest was to be charged at the rate of 1.4% per month on the unpaid balance for the next three to six months, and then to drop to .83% per month thereafter.

The effect of these interest schedules was to keep the annual rate of interest below the legal limit of 10% if the transaction be viewed from the date of shipment of Philco's goods, i. e., inclusive of the "free period."

The Trustee here contends, and the bankruptcy court so held, that the proper time from which to compute the applicable interest rate was the first time any interest could become owed under the contract, that is at the expiration date of the "free period". Under this theory of the case, 1.4% monthly interest translates to 16.8% annual interest, a rate proscribed by the Constitution of the State of Arkansas.

Contemporaneously with the entry of the Order complained of here, the Bankruptcy Judge filed a "Memorandum of Findings of Fact and Conclusions of Law" containing the following findings of fact:

"1. That Philco was floor planning the bankrupt's inventory of household appliances and electronic equipment manufactured or sold under the trademarks or trade-names of Philco-Ford Corporation.

"2. That the bankrupt would purchase appliances through a distributor and depending upon the particular transaction involved, the bankrupt would have a 90, 120, 150 or 180-day free period during which he could pay for the merchandise and there would be no interest charge. After the free period the bankrupt was charged at the rate of 1.4% per month on the unpaid balance for appliances for the next 3 to 6 months, depending upon how long the free period had been. (These particulars are set forth in Philco's Exhibit I.)

"3. That Philco represented to the bankrupt in each credit transaction that there would be a 90, 120, 150 or 180 day free period, as the case might be, for which there would be no interest charge.

"4. That a monthly rate of 1.4% equals an annual rate of 16.8% [and] is usurious under the laws of Arkansas.

"5. That if the free period is included as a period of time for which Philco is entitled under their arrangement with the bankrupt to collect interest, that the transactions are structured in such a fashion that the interest on an annualized basis would not exceed 10% per annum and would not be usurious under the laws of Arkansas.

"6. That the bankrupt's place of business was in Arkansas and that Philco sent its representatives into Arkansas from time to time to discuss with the bankrupt the status of their relationship and to advise the bankrupt of various promotions of prod-

ucts which were being financed by Philco. That mail was regularly sent to bankrupt in Arkansas by Philco and that Philco itself, in its Exhibit I, recognized that its floor plans for Arkansas dealers were subject to the Arkansas usury laws. There is no written argument that provides that the law of Missouri or any other state should be applicable to this transaction. Some of the financing statements were signed in Arkansas and some of the other papers were signed in Missouri."

After careful review of the record and briefs filed here on appeal, the Court accepts the above findings of fact, there appearing to be nothing "clearly erroneous" in the Bankruptcy Judge's findings, with one exception. The last ten words of findings of fact number 5, ". . . and would not be usurious under the laws of Arkansas" is a conclusion of law, not fact, and the Court does not consider itself bound by such a conclusion.

The issues, therefore, can be simply stated as follows:

(1) What law governs the permissible interest chargeable to the bankrupt in this case; and

(2) Does interest as charged under the facts set out above constitute a rate in excess of 10% computed on an annual basis?

The conflict of law issue has not been vigorously pursued here on appeal. The Bankruptcy Judge has found more than enough contacts to justify the application of Arkansas law, and it is the opinion of this Court that the applicable maximum allowable interest is that limit contained in the Arkansas Constitution, 10% per annum.

The second question does not succumb so easily to resolution. No Arkansas cases have been cited to nor discovered by the Court which have dealt with a similar fact situation. Counsel for both sides have cited and discussed a substantial portion of the usury-related maxims recognized in this State, but none of these leave the Court with a satisfying and secure apprehension of what the Arkansas law is on the precise factual issue now at bar.

The appellant would apparently characterize the high rate of interest which begins to accrue at the end of the "free period" as a penalty which should be apportioned over the life of the contract, analogizing to the default/acceleration cases whereby the Arkansas court has held that a debtor's default cannot have the effect of rendering a transaction usurious since the borrower has the power to avoid the consequences. *Mid-State Homes, Inc. v. Knight,* 237 Ark. 802, 376 S.W.2d 556 (1964); *Carney v. Mathewson,* 86 Ark. 25, 109 S.W. 1024 (1908).

In this case, however, because the dealer was never *obligated* to pay off the balance by the end of the "free period" the dealer could not be in default by failing to do so. The above cases, therefore, seem out of point.

Appellant seeks to characterize the transactions herein as a package deal bearing an inchoate interest rate which only becomes determinable on the date of payment, but which is structured in such a way that the overall interest rate for the life of the transaction cannot exceed 10% per annum.

Essentially, the appellant is seeking to validate a scheme whereby excessive interest *itself* becomes a penalty and therefore a deterrent to late payment by its debtors.

Apparently, as a device to keep its merchandising flowing to its dealers at as rapid a rate as possible, Philco has created an interest-free span of time in which the dealer may sell his inventory and pay off the company. If the dealer is unable to dispose of all the merchandise within the designated time, he is then penalized for not having moved the goods by accrual of interest at the rate of 1.4% per month for a specified period depending upon the duration of the "free period".

As the Court perceives the case, therefore, there is one Arkansas decision which is quite instructive. In *Redbarn Chemicals v.*

*Bradshaw,* 254 Ark. 557, 494 S.W.2d 720 (1973), the court found that where a usurious rate was charged on one month's account for failure to make timely payment, the contract was usurious even though the total interest billed was less than 10% for the calendar year involved. In speaking of the attempt to "annualize" the rate below 10% the court then stated, ". . . the present argument is actually an effort to retroactively purge the account of the taint of usury, which cannot be done."

There appears to be no logical reason why this case should be distinguished from *Redbarn Chemicals.* While it is true that the Arkansas case involves no "free period", the principal is the same. It makes no difference that in *Redbarn* the penalty exacted for late payment raised the interest from a legal percentage to an illegal one, while in the instant case the rate is raised from nothing to an illegal rate.

■ There was no interest properly chargeable to the bankrupt until the expiration of the "free period". It was at this time that interest legally began to accrue. It is the opinion of the Court that at that time it began accruing too fast to pass scrutiny under the Arkansas Constitution.

IT IS THEREFORE CONSIDERED ORDERED AND ADJUDGED that the order of the Bankruptcy Judge herein dated December 3, 1974 be, and the same is, hereby affirmed, and this cause is remanded to the bankruptcy court for further proceedings not inconsistent with this opinion.