**In re James Laurel ROMINE, Bankrupt.**

**Harrell SIMPSON, Jr., Trustee, Appellee,**

v.

**PHILCO FINANCE CORPORATION, INC., and the Insurance Company of North America, Surety, Appellants.**

No. 76–1535.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 13, 1977.

Decided June 15, 1977.

---

Chester C. Lowe, Jr., Little Rock, Ark., for appellants.

James L. Sloan, Little Rock, Ark., for appellee.

Before BRIGHT and HENLEY, Circuit Judges, and HARPER, Senior District Judge.*

BRIGHT, Circuit Judge.

This is an appeal by Philco Finance Corporation, Inc., a creditor of James Laurel Romine, a bankrupt, from a final judgment of the United States District Court for the Eastern District of Arkansas,[1] affirming an order of the bankruptcy judge[2] disallowing a claim of Philco and dismissing a reclamation petition filed by Philco on the ground that a financing arrangement between Philco and the bankrupt was tainted with usury. We reverse.

The record indicates that Mr. Romine was a retail dealer in home appliances who sold the Ford-Philco line of products in Salem, Arkansas. Products purchased by Romine from Ford-Philco were financed under a "Free Floor Plan Program" by Philco Finance Corporation, Inc., a Pennsylvania corporation, pursuant to its Inventory Financing and Security Agreement. Under the agreement Philco supplied inventory to Romine through a distributor, and Romine paid for the merchandise according to payment schedules structured to permit a dealer to defer payment for a specified "free period" of time during which no interest accrued on the principal indebtedness.

These designated "free periods" varied in length depending upon the individual transaction involved. For some shipments, the "free period" ran for ninety days from shipment of the merchandise; for others, it ran for one hundred twenty, one hundred fifty, or one hundred eighty days. If Romine paid for a shipment during the "free period," he was charged no interest whatsoever with respect to that particular obligation. If he did not pay within the free period, he was thereafter charged interest, called a "monthly renewal service charge," at the rate of 1.4% per month for a certain number of months corresponding to the length of the free period, after which the interest rate dropped to .83% per month until the obligation was paid.

When Romine was adjudicated a bankrupt, he was substantially indebted to Philco. Philco filed a reclamation petition seeking to obtain possession of certain items in Romine's place of business, and also filed a claim for the amount of Romine's indebtedness. The petition and claim were resisted by the trustee in bankruptcy who contended that the "floor plan" contract between Philco and Romine was void because the 1.4% per month rate of interest chargeable on the inventory was usurious in that it translated into 16.8% annual interest which exceeded the maximum allowable interest of 10% per annum authorized in the Arkansas Constitution, article 19, § 13. On this basis, the district court judge, affirming the bankruptcy judge, dismissed the petition and disallowed the claim.

---

* ROY W. HARPER, United States Senior District Judge, Eastern District of Missouri, sitting by designation.

1. The Hon. Terry L. Shell, United States District Judge for the Eastern District of Arkansas.

2. The Hon. Charles W. Baker, Bankruptcy Judge.

Philco maintains that the "free floor plan" agreement with Romine was not usurious in that it provided for retroactive interest if there remained any balance due upon the principal debt at the end of the "free period." Philco claims in effect that the financing arrangement was interest-free only if the principal obligation were satisfied during the "free period"; otherwise, interest could be charged retroactively covering the entire time frame of the "free period."

As perceived by the district court judge, the "free floor plan" program created an interest-free span of time which served as an incentive for a dealer to rapidly sell his inventory and pay off his obligation to the company. If the dealer failed to dispose of the merchandise within the designated time, he was penalized for not moving it quickly enough by the accrual of interest at the excessive rate of 1.4% per month for a time equal in length to the interest-free period.

Determination of whether the agreement between Philco and Romine was usurious hinges upon the date from which interest under the floor plan arrangement is to be appropriately computed.

If interest is computed, as Philco urges, from the date of shipment of merchandise from Philco to Romine, the "free period" would be included in the countable time frame so that the annual rate of interest would not exceed 10% which is permissible under Arkansas law. On the other hand, if interest is computed from the expiration date of the "free period" at which time the "monthly renewal service charge" could first be billed under the contract, then the monthly interest rate of 1.4% becomes 16.8% annual interest which is constitutionally proscribed in Arkansas. Thus, if the "free period" is included in the computation, the interest rate is acceptable, but if the "free period" is excluded, the interest rate is usurious. The district court judge, as did the bankruptcy judge, determined that the "free period" was excludable under the terms of Philco's "free floor plan program," and found Philco's arrangement with Romine to be tainted with usury.

The issue before us on review is not whether excessive interest charged for a brief period is fatal under Arkansas law if it can be shown that the annual interest charged is proper. Rather, we are confronted with the question of whether or not the district court judge erred in construing Philco's "free floor plan" as one in which interest begins to run after the "free" period and is therefore usurious in amount. While the law of Arkansas controls the case, the parties concede that the issue before us has not been squarely addressed by the courts of Arkansas. The district court analyzed the contract and upon that analysis concluded that the contract was tainted by usury. We disagree.

■ We do not have before us any application of state law in which we must pay some deference to a district court's expertise. We consider a written contract which requires interpretation of its terms. In these circumstances, we also are not bound by the clearly erroneous rule of Rule 52(a). *Mackey v. National Football League*, 543 F.2d 606, 612 (8th Cir. 1976), *pet. for cert. filed*, 45 U.S.L.W. 3490 (U.S. Jan. 5, 1977); *Frito-Lay, Inc. v. So Good Potato Chip Co.*, 540 F.2d 927, 929–30 (8th Cir. 1976); *Ralston Purina Co. v. Hartford Acc. & Indem. Co.*, 540 F.2d 915, 918 n. 3 (8th Cir. 1976).

■ As the district court recognized, the "free period" served as an incentive for the dealer to turn over (sell) his inventory as rapidly as possible. Philco therefore charges no interest on the invoice of the floor-planned merchandise if its dealer pays for the merchandise, presumably through its sale, within a given length of time—the "free period." Given this purpose of the "free period," the term "interest free" as used in the agreement merely means that interest accrued during the "free period" is waived if Philco's invoice is paid within the "free period." If the invoice is not paid, the interest accrued during the "free period" is charged to the debtor ratably over a subsequent period equal in length to the "free period," in addition to the maximum interest allowed by law, until the invoice is paid.

This construction of the contract is the one most consistent with the purpose of the "free floor plan" agreement. The fact that the period during which the 1.4% rate was charged was always equal in length to the "free period" further supports our conclusion that this higher rate was merely the means to recover unwaived interest previously accrued during the "free period."

■ Although there are no Arkansas cases directly on point,[3] our conclusion is consistent with the accepted principle that a transaction is not usurious unless the amount to be paid by the borrower is greater than the amount he would be required to pay to retire the principal indebtedness with interest at 10% per annum. *Green v. Mid-State Homes, Inc.*, 245 Ark. 866, 435 S.W.2d 436 (1968); *McDougall v. Hachmeister*, 184 Ark. 28, 41 S.W.2d 1088 (1931).

It is extremely unjust to hold Philco's financing arrangement usurious and thus penalize Philco for phrasing or "merchandising" its floor-planning method in such a way as to motivate its dealers to sell the floor-planned inventory promptly by offering a financial benefit for such efforts. The judgment below rests on an unrealistic view of this transaction and does nothing more than penalize Philco for merchandising, *i. e.,* packaging its dealer financing arrangements in an attractive manner.

Reversed.

HENLEY, Circuit Judge, dissenting.

I respectfully disagree. While Philco could have established a floor plan which expressly provided for a 1.4% rate to be charged as a means of recovering unwaived interest previously accrued during the "free period," it did not do so in this case. Philco's agreement with Romine simply provided that "a 1.4% monthly renewal service charge is to be billed at the end of the free period." Interest could not be billed to Romine nor was it owed by him until the "free period" had expired. I think it fair to interpret this to mean that the "free period" was truly free in that no interest covering that time span was chargeable to Romine under the contract. The terms of the floor plan make no mention of retroactive charges, but instead refer to a "renewal" charge which suggests a prospective intent.

As recognized in the majority opinion, the issue presented here concerning the appropriate method for computing interest where there is a "free period" such as that in Philco's "free floor plan" has not been squarely addressed by the courts of Arkansas. However, in this case, the question has been considered by two experienced Arkansas judges, and their determination is worthy of special weight. *Luke v. American Family Mut. Ins. Co.*, 476 F.2d 1015, 1019 and n. 6 (8th Cir. 1972), *aff'd en banc,* 476 F.2d 1023 (1973).

The public policy of Arkansas against usury is a strong one, and it has been repeatedly recognized by the federal courts in this circuit applying Arkansas law. *McAdoo v. Union Nat'l Bank of Little Rock, Ark.*, 535 F.2d 1050 (8th Cir. 1976); *Stephens Security Bank v. Eppivic Corp.*, 411 F.Supp. 61 (W.D.Ark.1976), *aff'd,* 553 F.2d 102 (8th Cir. 1977); *First Nat'l Bank in Mena v. Nowlin*, 374 F.Supp. 1037, 1038 (E.D.Ark.1974), *aff'd,* 509 F.2d 872 (8th Cir. 1975); *National Surety Corp. v. Inland Properties, Inc.*, 286 F.Supp. 173 (E.D.Ark. 1968), *aff'd,* 416 F.2d 457 (8th Cir. 1969).

The Constitution of Arkansas, art. 19, § 13, provides that the maximum rate of

---

**3.** The early case of *White v. Friedlander*, 35 Ark. 52 (1879), did involve a fact situation somewhat similar to that presented here. That case also involved the sale of goods. The purchasers had sixty days from the date of each invoice to pay it. At the end of the sixty days the purchasers executed notes in payment of the invoices, with interest at the maximum allowed by law, from the time of the invoices of goods furnished, instead of interest from the expiration of sixty days. Because the purchas-

er was under no prior obligation to pay interest from the date of the purchase, the court held usurious the subsequent agreement to pay such interest in addition to the maximum rate normally allowed by law. 35 Ark. at 54–55. The court noted, however, that "an express agreement" to pay interest from the date of sale on the purchaser's failure to pay the invoice at the end of sixty days from the date of purchase "*might be permissible.*" *Id.* at 55 (emphasis added).

interest that may be charged legally in the state is 10% per annum, simple interest, and that obligations calling for the payment of interest in excess of that rate are void both as to principal and interest. There are numerous statutes implementing this constitutional provision, Ark.Stat.Ann. 68–602 *et seq.*, and the Supreme Court of Arkansas "has been zealous in guarding against any attempt to evade our constitutional provisions relative to usury." *Huchingson v. Republic Finance Co.*, 236 Ark. 832, 370 S.W.2d 185 (1963).

Not long ago the Supreme Court of Arkansas held in *Redbarn Chemicals v. Bradshaw*, 254 Ark. 557, 494 S.W.2d 720 (1973), that where a usurious rate was charged on one month's account for failure to make timely payment, the contract was usurious even though the total interest billed was less than 10% for the calendar year involved. The holding of the district court in this case is certainly consistent with the rationale of *Bradshaw*, although *Bradshaw*, of course, does not require a finding of usury here.

Philco should not be penalized for implanting an incentive in its dealer financing arrangements. At the same time, Philco should be required to make financing arrangements that manifestly pass Arkansas constitutional muster.

Giving due weight to the findings of the district court in light of the strong public policy of Arkansas against usury and of the tenor of the case law applying that policy, I would hold permissible the district court's conclusion that the "free period" of the Philco floor plan was excludable for purposes of interest computation, and the 1.4% interest rate thus usurious.